[No. E033503. Fourth Dist., Div. Two. Jan. 28, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
LONNIE LEE POSLOF, Defendant and Appellant.

94

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens, Adrianne S. Denault and Lise Jacobsen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GAUT, J.—**

## 1. Introduction

Defendant Lonnie Lee Poslof appeals his jury conviction for failing to register as a sex offender in Twentynine Palms, in violation of Penal Code section 290, subdivision (g)(2).[1] In a bifurcated trial, the jury also found true allegations that defendant had two prior convictions for lewd and lascivious acts upon a child,[2] which qualified as serious or violent felonies,[3] and had served two prior prison terms and failed to remain free of prison custody for five years.[4] The trial court sentenced defendant to a total term of 27 years to life in state prison.

Defendant contends he was unaware he had an obligation to register as a sex offender in Twentynine Palms. He therefore claims there was insufficient evidence to support the trial court's finding he willfully failed to register as a

[1] Unless otherwise noted, all statutory references are to the Penal Code. References to section 290 are to the version in effect at the time of the charged offense. (Stats 2001, ch. 843, § 1.3.)

[2] Section 288, subdivision (a).

[3] Sections 1170.12, subdivision (c) and 667, subdivision (e).

[4] Section 667.5, subdivision (b).

sex offender in violation of section 290. Defendant also contends the trial court did not properly instruct the jury on the "willfulness" requirement and compounded the error by giving the general intent instruction, CALJIC No. 3.30.

Additionally, defendant contends the trial court abused its discretion in denying his *Romero*[5] motion and his sentence constitutes cruel and unusual punishment under the California and United States Constitutions.

Following our earlier opinion in this case affirming the trial court judgment, the California Supreme Court granted review. The Supreme Court has transferred this case back to us with directions to vacate our earlier decision and reconsider the cause in light of its recent decision, *People v. Barker* (2004) 34 Cal.4th 345 [18 Cal.Rptr.3d 260]. Having done so, we again affirm the judgment.

## 2. Facts and Procedural Background

In 1992, defendant was convicted of two counts of lewd and lascivious acts with a child.[6] Defendant was ordered to register as a sex offender under section 290. He was released in 1995 on parole from state prison.

After defendant was paroled, he registered as a sex offender and annually updated his registration. His most recent registration update was on May 30, 2002, in Merced County. He was not registered anywhere else at the time or thereafter.

In July 2002, defendant signed a purchase agreement for a home in Twentynine Palms. On August 8, 2002, San Bernardino Sheriff's Deputy Garvin went to defendant's Twentynine Palms home to locate and serve an arrest warrant on Charles Owens. Defendant answered the door and told Garvin he did not know who Owens was and that defendant had recently purchased the home and had been living there for the last couple weeks. Defendant's 16-year-old daughter was with defendant at the home. Garvin checked for outstanding warrants for defendant and discovered defendant was a section 290 registrant. Defendant said his registration was up to date.

After investigating defendant's registration further and giving defendant an opportunity to register the Twentynine Palms residence, on August 20, 2002, Sheriff's Deputies Patton and Calvert followed up on the matter. They went

---

[5] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

[6] Section 288, subdivision (a).

to the Twentynine Palms residence, found defendant at the residence, entered the home, and found evidence that defendant and his daughter had been living there. The deputies arrested defendant for failing to register as a sex offender in Twentynine Palms, in violation of section 290.

Defendant testified at trial in his own defense. He maintained that his sole residence was the Merced residence and he was not required to register the Twentynine Palms home because he did not stay there for five or more consecutive working days.

### 3. CALJIC No. 1.20

Defendant argues that CALJIC No. 1.20, as modified by the court, erroneously instructed the jury on the section 290 offense. Specifically, defendant asserts that by adding the language "and failed to do so" to the end of the instruction, the instruction negated the "willfulness" element.

Section 290 prohibits the willful failure to register as a sex offender. Former section 290 provided in relevant part: "(a)(1)(A) Every person described in paragraph (2), for the rest of his or her life . . . shall be required to register with the chief of police of the city in which he or she is residing, . . . or the sheriff of the county . . . *within five working days of coming into, or changing his or her residence or location. . . .* (B) If the person who is registering has more than one residence address or location at which he or she regularly resides or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdictions in which he or she regularly resides or is located." (Italics added.) Subdivision (g)(2) provides that, when a person required to register as a sex offender based on a felony conviction "*willfully* violates any requirement"[7] of section 290, the person is guilty of a felony. The purpose of section 290 is "to allow local law enforcement agencies to keep known sex offenders under surveillance . . . ."[8]

The trial court instructed the jury on the elements of the section 290 offense as follows:

"In order to prove that the defendant failed to register a second residence or temporary residence in violation of Penal Code section 290, subsection [*sic*] (G), subsection [*sic*] (2), the People must prove all of the following elements:

"No. 1, the defendant is required to register as a sex offender under Penal Code section 290 within give [*sic*] working days of establishing a second residence or temporary residence;

---

[7] Italics added.

[8] *People v. Davis* (2002) 102 Cal.App.4th 377, 382 [125 Cal.Rptr.2d 519].

"No. 2, the defendant has actual knowledge of his obligation to register the second residence or temporary residence.

"No. 3, the defendant maintained a second residence, either temporarily or permanently, at the Didsbury Road [Twentynine Palms] location; and

"No. 4, the defendant willfully failed to register the second residence."

The trial court further instructed the jury on the definition of "willfully" by giving CALJIC No. 1.20 as follows:

"The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. [¶] Further, as used in these instructions and applied to the case, the term willfully means that the defendant had actual knowledge of his duty to register a change of residence, a second residence or a temporary residence and failed to do so." Defendant and the prosecution agreed the court should give CALJIC No. 1.20 but defense counsel objected to the added language at the end of the instruction.

Defendant argues the instruction improperly infers that if defendant knew he was generally required to register and did not do so, he willfully violated the registration requirement, and there need not be a separate finding of willfulness. As explained below, we conclude that the instructions as a whole were proper.

■ Our Supreme Court in *People v. Garcia*[9] stated that a violation of section 290 requires a finding of willfulness, and in order to prove willfulness the prosecution must prove: (1) the defendant had actual knowledge of his duty to register as a sex offender and (2) the defendant failed to register.[10] In *Garcia* the defendant was given notice of the registration requirement but he did not actually know he was required to register. The *Garcia* court concluded that notice alone was not sufficient to establish the defendant willfully failed to register. The defendant must have actual knowledge of the duty to register, although a jury may infer knowledge from notice.[11]

■ Quoting the United States Supreme Court in *Lambert v. California*,[12] the *Garcia* court stated in this regard, " 'We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the

[9] *People v. Garcia* (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590].
[10] *People v. Garcia, supra,* 25 Cal.4th at pages 753–754.
[11] *People v. Garcia, supra,* 25 Cal.4th at page 753.
[12] *Lambert v. California* (1957) 355 U.S. 225, 229–230 [2 L.Ed.2d 228, 78 S.Ct. 240].

ordinance can stand. . . . Where a person did not know of the duty to register, and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process.' [Citations.]"[13]

The instruction given to the jury in the instant case is consistent with *Garcia* and *Lambert* in defining willfulness. It instructs the jury it must find defendant had actual knowledge of the duty to register the Twentynine Palms home and failed to do so.

■ Since there was no instructional error in this regard, we reject defendant's alternative contention that his attorney's failure to object to CALJIC No. 1.20 as given constitutes ineffective assistance of counsel. Where there is "no sound legal basis for objection, counsel's failure to object to the admission of the evidence cannot establish ineffective assistance."[14]

### 4. CALJIC No. 3.30

Defendant argues the trial court erred in giving general intent instruction, CALJIC No. 3.30. He claims the instruction negated the requirement the jury find defendant acted willfully in failing to register as a sex offender.

CALJIC No. 3.30, as given to the jury, states: "In the crime of Failing to Register a second or temporary residence per Penal Code section 290 there must exist a union or joint operation of act or conduct and general criminal intent. General intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful. One cannot fail to perform an act without knowing what act is required to be performed."

Defendant contends the general intent instruction, coupled with the other instructions, should not have been given because it did not require the jury to find that defendant specifically knew that staying at his home in Twentynine Palms required him to register as a sex offender in Twentynine Palms. As argued in the trial court, defendant asserts that under *Garcia* and *People v. Edgar*[15] a section 290 offense is a specific intent crime, not a general intent offense, because the term "willfully" requires that the defendant have actual knowledge of the duty to register. Defendant thus reasons that section 290 requires the specific intent to violate the law.

[13] *People v. Garcia, supra,* 25 Cal.4th at page 753.
[14] *People v. Cudjo* (1993) 6 Cal.4th 585, 616 [25 Cal.Rptr.2d 390, 863 P.2d 635]; *People v. Majors* (1998) 18 Cal.4th 385, 403 [75 Cal.Rptr.2d 684, 956 P.2d 1137].
[15] *People v. Edgar* (2002) 104 Cal.App.4th 210, 219 [127 Cal.Rptr.2d 662].

In *People v. Barker, supra,* 34 Cal.4th 345, our high court stated it agreed with *Edgar* that giving CALJIC No. 3.30 was error. The court in *Barker* reasoned that a jury might conclude from CALJIC No. 3.30 "that a defendant may be guilty of violating section 290 even if unaware of his or her obligation to register." (*Barker, supra,* at p. 361.) Nevertheless, the *Barker* court concluded the error was harmless beyond a reasonable doubt because the defendant was aware of his registration obligation and his attorney did not claim the contrary in trying the case. (*Ibid.*)

Likewise, under *Barker*, we conclude that CALJIC No. 3.30, as given, was inappropriate. Even though the trial court erred in giving CALJIC No. 3.30, such error was harmless. Unlike in *Garcia* and *Edgar*, here, the trial court on several occasions instructed the jury that in order to find defendant guilty of failing to register in violation of section 290, the jury must find defendant had actual knowledge he was required to register the Twentynine Palms residence and willfully failed to do so.

█ Juries are given a wide variety of instructions on how evidence is to be considered and are presumed to follow those instructions.[16] "In order to prevail on a claim that the jury instructions are misleading, the claimant must prove a reasonable likelihood that the jury misunderstood the instructions as a whole. [Citation.] ' " 'The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.' " ' [Citation.]"[17]

Here, we conclude that based on the instructions as a whole it is unlikely the jury disregarded instruction on several occasions that the jury must find defendant had actual knowledge of the duty to register the Twentynine Palms residence. Unlike in *Barker* and *Edgar*, CALJIC No. 3.30, as given in the instant case, included the following additional language: "One cannot fail to perform an act without knowing what act is required to be performed." This indicates the jury could not find defendant failed to register in violation of section 290 unless the jury found defendant knew he was required to register the Twentynine Palms residence.

In the instant case the court also instructed the jury on the elements of a section 290 offense, explaining that the jury must find that "the defendant has actual knowledge of his obligation to register the second residence or temporary residence," and "willfully" failed to do so. In instructing on the

---

[16] *Richardson v. Marsh* (1987) 481 U.S. 200, 206–207 [95 L.Ed.2d 176, 107 S.Ct. 1702]; *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 148 [89 Cal.Rptr.2d 28]; see also *People v. Osband* (1996) 13 Cal.4th 622, 714 [55 Cal.Rptr.2d 26, 919 P.2d 640] and *People v. Pinholster* (1992) 1 Cal.4th 865, 919 [4 Cal.Rptr.2d 765, 824 P.2d 571].

[17] *People v. Van Winkle, supra,* 75 Cal.App.4th at page 147.

definition of "willfully," the court stated that willfully "means with a purpose or willingness to commit the act or to make the omission in question. [¶] Further, as used in these instructions and as applied to the case, the term 'willfully' means that the defendant had actual knowledge of his duty to register a change of residence, a second residence, or a temporary residence, and failed to do so."

Viewing the instructions in their totality, we conclude the error in giving CALJIC No. 3.30 was harmless beyond a reasonable doubt. (*People v. Barker, supra,* 34 Cal.4th at p. 361.)

### 5. Defendant's Proposed Special Instruction

Defendant argues that the trial court erred in rejecting his special instruction on the elements of a section 290 crime. His proposed special instruction states that the elements as applied in the instant case are:

"1. The defendant is required to register as a sex offender under Penal Code section 290.

"2. The defendant resided, either temporarily or permanently [*sic*], at 73547 Didsbury Road, in 29 Palms, Ca. For [*sic*] 5 or more consecutive working days immediately preceding August 20th, 2002.

"3. The defendant willfully failed to register the Didsbury address as prescribed under Code section 290 with actual knowledge of his obligation to register that address."

Specifically, defendant contends the trial court erred in not giving his proposed instruction on the second element. Defendant argues section 290, subdivision (a)(1)(A) provides that defendant was not required to register unless he resided in the Twentynine Palms home for at least five consecutive working days. The trial court instructed the jury it need only find defendant failed to register within five working days of "establishing" his second residence.

We conclude the trial court appropriately rejected defendant's proposed special instruction. Former section 290 did not state that registration was not required unless an individual has stayed at a location for at least five consecutive working days. Section 290, subdivision (a)(1)(A), only stated that a sex offender was required to register "within five working days of coming into, or changing his or her residence or location . . . ." Subdivision (a)(1)(B), which applied to a sex offender such as defendant who stayed at more than one location, stated that: "If the person who is registering has more than one

residence address or location at which he or she regularly resides or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdictions in which he or she regularly resides or is located."

There is no language in section 290 that states or implies that a sex offender need not register if he stays at a second or additional location for less than five consecutive days. The reference in the statute to "five working days" pertains to the time in which a sex offender must notify law enforcement of his location upon entering or leaving a jurisdiction or establishing a second or additional location. Here, the five-day notice period was triggered upon defendant establishing an additional location or residence. When the five-day notice period was triggered in defendant's case is a question of fact for the jury, which is not dependent upon whether he stayed at the residence five or more consecutive days.

Defendant's reliance on *People v. Davis*[18] for the proposition that the duty to register does not arise until a sex offender has been within a jurisdiction for at least five consecutive working days is misplaced. In *Davis*, the defendant claimed that, although he generally knew he was required to register, he did not know he was required to notify the last registering agency of his move out of the jurisdiction. The *Davis* court held the trial court committed reversible error by failing properly to instruct the jury that the jury must find the defendant had actual knowledge of this particular duty to register.[19] Here, the trial court properly instructed the jury as to actual knowledge.

Defendant quotes language from *Davis* stating: "The following examples illustrate when a sex offender's registration duties begin and end. A sex offender who enters the City of Los Angeles in January *and remains there for five consecutive working days must register with the LAPD no later than the fifth consecutive working day*. If the offender drives to the City of Riverside in February, stays overnight, and returns to Los Angeles the following day he is still under his original duty to register in Los Angeles; no duty arose to register in Riverside. *If, however, the sex offender drives to Riverside and remains there for five consecutive working days, he is under a duty to register* with the Riverside police department *no later than the fifth consecutive working day*. His duty to register in Los Angeles also ends on that day because the LAPD no longer has an interest in surveilling a sex offender residing outside its jurisdiction."[20]

The issue in *Davis* was whether a separate offense was committed under section 290, subdivision (a)(1)(A) each time the defendant entered the same

---

[18] *People v. Davis, supra,* 102 Cal.App.4th 377.
[19] *People v. Davis, supra,* 102 Cal.App.4th at page 385.
[20] *People v. Davis, supra,* 102 Cal.App.4th at pages 382–383, italics added.

jurisdiction and failed to register within five days. The *Davis* court concluded that, "Given the purpose of section 290, to allow local law enforcement agencies to keep known sex offenders under surveillance, the duty to register arises when the sex offender enters a jurisdiction and ends when he leaves the jurisdiction."[21]

The *Davis* court did not address the issue of when a residence becomes a second residence and registration is triggered under subdivision (a)(1)(B). We do not consider *Davis* dispositive or relevant in the instant case, and even if it is factually similar, *Davis* is not persuasive authority for the proposition that there is no duty to register a sex offender's additional residence under section 290 until the defendant has stayed at the residence at least five consecutive working days. Nothing in the language of section 290 compels such a conclusion.

The purpose of section 290, of assuring that convicted sex offenders shall be readily available for police surveillance,[22] would be defeated were an offender allowed to remain at one or more undisclosed locations on a regular basis simply because the offender limited his regular or weekly stay to less than five consecutive work days a week. To read into the registration statute such a contrived construction would render section 290, subdivision (a)(1), nonsensical, subvert the purpose of the statute, and make surplusage of the words "regularly resides" contained in that provision.[23] This case provides a graphic example of how a sex offender could easily evade section 290 registration requirements if we were to adopt the restricted meaning of additional or multiple residences put forth by defendant.

### 6. Sufficiency of Evidence

Defendant contends there was insufficient evidence to support his section 290 conviction, first, because there was no evidence he remained in Twentynine Palms for more than five consecutive working days and, second, because, even if this was not required, there was insufficient evidence that he willfully failed to register.

 "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable

---

[21] *People v. Davis, supra,* 102 Cal.App.4th at page 382.

[22] *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101]; *People v. Davis, supra,* 102 Cal.App.4th at page 382.

[23] *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].

doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citations.]"[24] Based on defendant's and Sheriff Deputy Patton's testimony, we conclude there was sufficient evidence to support a finding of actual knowledge.

## A. *Defendant's Trial Testimony*

Defendant testified he annually signed registration notices and initialed each of the paragraphs specifying particular registration requirements. He did not read the entire form each year but acknowledged that when he initialed and signed the forms at the police station, he was told what the requirements were. He assumed, although he was not told, that he did not have to register unless he stayed at a location for at least five consecutive working days and therefore made a point of not staying at the Twentynine Palms location for more than five consecutive days.

Defendant signed a change of address annual registration update form on May 30, 2002. He initialed the notice statement that " 'If I have more than one residence address or location, I must register all addresses and locations with the agency or agencies having jurisdiction over them.' "

Defendant acknowledged the registration renewal notices stated that he must register within five working days of coming into or changing residence or location, which he said meant, " 'I must inform in writing within five working days the law enforcement agency with which I last registered and then register my address or location in person.' " Also, " 'If I have more than one residence address or location, I must register all addresses or locations with the agency or agencies having jurisdiction over them.' " Defendant testified that, with regard to this notice, "what I believed, my requirements were that I had to register if I moved somewhere within five days, or if I was—that I stayed somewhere over five days, I would have—or after five days, that I was required to register." He said no one explained the notice to him other than the admonishments contained in the forms he signed.

Defendant testified that, "[A]s far as I have been told, that I can't be in any other place than where I live for over, actually for five days, at the five days and not the weekends, but as five days, that I would have to be considered being moved." Defendant said he did not stay in Twentynine Palms five or

---

[24] *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; see also *People v. Hill* (1998) 17 Cal.4th 800, 848–849 [72 Cal.Rptr.2d 656, 952 P.2d 673].

more consecutive days "[b]ecause I didn't want to give anybody the idea that I was moving here, and that I wouldn't be in violation of anything such as that."

Defendant further testified that in about 1997, he began visiting his brother in Twentynine Palms. Defendant tried to visit his brother in Twentynine Palms as often as possible to help him with his auto repair business because his brother had had a heart attack. Defendant ran his brother's auto repair business when he was in Twentynine Palms.

Defendant claimed his mother bought the Twentynine Palms house although he signed the purchase agreement. Defendant immediately began remodeling the home. He stayed there when he was in Twentynine Palms. His mother did not return to the home after purchasing it. He applied for a phone for the home but service was declined. Defendant acquired electrical service for the home.

Defendant's daughter began living with defendant at the Twentynine Palms home August 8, 2002. She was to stay there by herself while defendant was in Merced.

Defendant acknowledged he saw a doctor in Twentynine Palms and the doctor's office made a follow-up doctor appointment for him. At trial, defendant was shown photographs of the Twentynine Palms home. He said they showed his daughter's clothes hanging out to dry.

B. *Deputy Patton's Testimony*

Sheriff's Deputy Patton testified he was assigned to investigate whether defendant had violated his duty to register as a sex offender. On August 20, 2002, Patton went to the Twentynine Palms home with Deputy Calvert. They knocked on the front door. No one answered. Calvert went to the side of the house, looked through a window, and saw defendant inside the house. He ordered defendant to come outside. He did so. Defendant said he lived in Merced. He denied he had talked to detectives within the past month. Patton told defendant he knew detectives had previously talked to him. Defendant then admitted he had previously talked to detectives.

When Patton asked defendant to see the home ownership papers, defendant provided Patton with a box of papers which included a purchase agreement

for the home, May, June, and July Verizon telephone bills in defendant's name mailed to the Twentynine Palms home, a Department of Motor Vehicles (DMV) application for title and registration of defendant's trailer, dated August 15, 2002, stamped with the Twentynine Palms DMV stamp, a doctor's appointment card for defendant to visit a Twentynine Palms doctor on August 13th, medication prescriptions and medicine bottles filled at a local pharmacy, and three down payment receipts in defendant's name for the Twentynine Palms home.

In a bedroom in the Twentynine Palms home, Patton saw a bed, television, and men's clothing which defendant said belonged to him. There was running water and electricity in the home and in another bedroom, clothing, which defendant said belonged to his daughter. Patton found fresh food in the kitchen, cans of food in the cupboards, and dirty dishes in the sink. The refrigerator was operating, the washing machine was washing clothes, and clothing was piled up beside the washer.

Defendant told Patton he purchased the home in July 2002 and stayed there three days a week. A couple minutes later, he said he stayed there one or two days a week. Patton said defendant continued to change his story about how long he stayed at the home. Defendant said he bought the home for him and his daughter so his daughter would have a safe place to grow up.

## C. *Discussion*

Even if a contrary finding can be reconciled with the evidence, this court is bound to accept the jury's finding if supported by the evidence.[25] This court is bound to accept the jury's finding that defendant knew he was required to register the Twentynine Palms home if such finding is supported by substantial evidence.

Defendant's first contention that there was insufficient evidence that defendant resided at the Twentynine Palms home for five consecutive working days is without merit. First, there need not be evidence of this. There need only be substantial evidence defendant had established a residence at the Twentynine Palms home and failed to register within five working days of doing so. There was ample evidence of this based on the above summarized testimony and thus there was sufficient evidence establishing that defendant was required to register the Twentynine Palms residence.

---

[25] *People v. Escobar* (1992) 3 Cal.4th 740, 750 [12 Cal.Rptr.2d 586, 837 P.2d 1100].

The more difficult determination is whether there was sufficient evidence to support the jury's finding that defendant had actual knowledge he was required to register. We conclude there was sufficient evidence, even though a jury could have concluded otherwise as well. Defendant signed multiple documents stating that he understood his lifetime registration requirements and was informed of the requirements as he annually initialed and signed the registration notice forms. The *Garcia* court noted that "the registration statute establishes a method of providing notice of the registration requirement that can easily be documented, as it was in this case. (§ 290, subd. (b).) Although notice alone does not satisfy the willfulness requirement, a jury may infer from proof of notice that the defendant did have actual knowledge, which *would* satisfy the requirement."[26]

The registration notice documents stated he was required to register more than one residence address or location and there was substantial evidence he owned a home in Twentynine Palms and was regularly living there with his daughter. The great weight of the evidence showed that defendant had established a second residence in Twentynine Palms and a reasonable inference could be made that he knew this and, in turn, knew he was required to register. The evidence was sufficient to support a finding by the trier of fact that defendant's connection to the residence was outside the realm of a brief, isolated sojourn or transitory relationship and that he knew he was required to register the home.

Alternatively, the jury could reasonably conclude defendant in fact had been staying at the Twentynine Palms home for more than five consecutive working days, which he claimed obligated him to register, and thus defendant knew he was required to register.

We note defendant's reliance on *People v. LeCorno* (2003) 109 Cal.App.4th 1058 [135 Cal.Rptr.2d 775] is misplaced. *LeCorno* is factually distinguishable. In *LeCorno* there was strong evidence to support a finding defendant did not know that the intermittent nights he spent sleeping in his friend's basement made that location a second residence requiring sex offender registration. Furthermore, the trial court failed to instruct the jury that actual knowledge of the duty to register the second residence was required.

---

[26] *People v. Garcia, supra,* 25 Cal.4th at page 752.

We conclude the evidence was sufficient to support the jury's finding that defendant had actual knowledge of the duty to register the Twentynine Palms residence and defendant failed to do so in violation of section 290.

### 7. *Romero* Motion

Defendant contends that, based on the insignificant nature of the current offense and the lack of violence in its commission, the trial court abused its discretion in denying his *Romero* motion to dismiss one of his prior strike convictions. Before the sentencing hearing, the trial court heard and denied his motion. The court acknowledged that it was a difficult decision for the court but concluded there were insufficient facts to justify granting defendant's motion and that granting the motion would, in effect, result in setting aside the jury's verdict.

Our high court in *People v. Williams*,[27] explained that, in ruling on a motion to strike a prior conviction under the Three Strikes law, the trial court must consider whether, in light of the nature and circumstances of the present offense, the prior felony convictions, and the particulars of the defendant's background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he or she had not previously been convicted of one or more serious or violent felonies.[28] The trial court's exercise of discretion in this regard is reviewed under the deferential, abuse-of-discretion standard.[29]

Here, the trial court followed the procedure suggested by *Williams* and concluded an order striking defendant's prior convictions would be inappropriate. Indeed, the trial court's handling of the sentencing proceeding underscores the substantial consideration it had given the motion to strike.

Paraphrasing *Williams*, in light of the nature and circumstances of defendant's present felony conviction, his record of criminal behavior, which began 1974 and repeatedly caused his incarceration, and also in light of the particulars of his background, character, and prospects, which were not

---

[27] *People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429].

[28] See also *People v. Garcia* (1999) 20 Cal.4th 490, 498–499 [85 Cal.Rptr.2d 280, 976 P.2d 831].

[29] *People v. Cole* (2001) 88 Cal.App.4th 850, footnote 9 [106 Cal.Rptr.2d 174]; *People v. Myers* (1999) 69 Cal.App.4th 305, 309–310 [81 Cal.Rptr.2d 564]; but see *People v. Benevides* (1998) 64 Cal.App.4th 728, 734–735 [75 Cal.Rptr.2d 388].

positive, defendant cannot be deemed outside the spirit of the Three Strikes law.[30] Defendant's reliance on *People v. Cluff*[31] is misplaced. *Cluff* is factually distinguishable and not controlling here.

We thus conclude the trial court's refusal to strike defendant's prior serious felony convictions in the interests of justice was not an abuse of discretion.

### 8. Cruel and Unusual Punishment

Defendant contends his sentence for failing to register in violation of section 290 constitutes cruel and unusual punishment. We disagree.

Upon review of all the evidence as well as consideration of factors such as protecting society, we conclude defendant's lengthy sentence is a permissible means of punishing defendant and deterring others from committing future crimes. Defendant's lengthy criminal record, which included the commission of a section 273d felony in 1982 for corporal punishment or injury of a child, two section 288, subdivision (a) sexual felonies in 1992 for committing lewd or lascivious acts upon a child, a felony drug possession offense in 1996, and, after defendant's release from prison in 1995, three parole violations in 1998 and 1999. The current offense on August 20, 2002, brought defendant within both the letter and spirit of the Three Strikes law.

In light of defendant's individual circumstances and criminal history, the term imposed is not grossly disproportionate to the current offense and does not constitute cruel and unusual punishment in violation of the Eighth Amendment.[32] Nor is the punishment "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."[33] Defendant's 27-years-to-life Three Strikes sentence does not qualify as cruel and unusual punishment due to his criminal history as a recidivist and child sex offender whom the jury found knowingly failed to register in violation of section 290.

---

[30] *People v. Williams, supra,* 17 Cal.4th at page 163; *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [89 Cal.Rptr.2d 401]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [87 Cal.Rptr.2d 829]; *People v. Thornton* (1999) 73 Cal.App.4th 42, 48–49 [86 Cal.Rptr.2d 84]; *People v. Barrera* (1999) 70 Cal.App.4th 541, 554–555 [82 Cal.Rptr.2d 755]; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475–477 [79 Cal.Rptr.2d 83].

[31] *People v. Cluff* (2001) 87 Cal.App.4th 991 [105 Cal.Rptr.2d 80].

[32] *Harmelin v. Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 2680]; *Rummel v. Estelle* (1980) 445 U.S. 263, 284–285 [63 L.Ed.2d 382, 100 S.Ct. 1133].

[33] *In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]; *People v. Dillon* (1983) 34 Cal.3d 441, 477–478 [194 Cal.Rptr. 390, 668 P.2d 697]; see *People v. Murphy* (2001) 88 Cal.App.4th 392, 394 [105 Cal.Rptr.2d 779].

## 9. Disposition

The judgment is affirmed.

Hollenhorst, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 18, 2005.