Filed 5/27/22  P. v. Yang CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>MIKE YANG,<br><br>　　　Defendant and Appellant. | F079935<br><br>(Super. Ct. No. F13900176)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Jennifer Oleksa and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant Mike Yang was convicted by a jury of two counts of oral copulation or sexual penetration with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b)) and two counts of lewd acts upon a child (Pen. Code, § 288, subd. (a)). The convictions arose from Yang's two instances of sexual assault against a minor (J.Y.).

Yang raises three issues on appeal. First, he claims the trial court erred when it received J.Y.'s multi-disciplinary (MDIC) interview into evidence. The MDIC interview was conducted in 2012 (seven years before trial) - wherein J.Y. described Yang's two assaults. The trial court received the MDIC interview in evidence pursuant to Evidence Code[1] section 1360, which allows for statements describing abuse of children under the age of 12 years to be admitted. Second, Yang claims the trial court abused its discretion by denying his *Romero*[2] motion to strike his prior rape conviction at sentencing. Finally, Yang claims the trial court improperly calculated his presentence custody credits.

We agree Yang is entitled to 40 additional days of presentence custody credits, but in all other respects we affirm the judgment.

# FACTUAL BACKGROUND

J.Y. was seven years old when she lived in Fresno in 2012. Periodically, J.Y.'s parents dropped her off at her grandparents' house (along with her siblings) while they worked. In March of 2012, J.Y. was at her grandparents' house with her uncles and siblings. She went into a room to sit with her uncle while he watched something on his laptop. Yang – whom J.Y. referred to as "Fong" – came into the room and laid down next to J.Y. Yang inserted his finger inside J.Y.'s vagina while a blanket covered both of them and J.Y.'s uncle heard her yell out once. J.Y. got up out of the blanket and turned

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

2.

the light on in the room. Yang left the room six or seven minutes after J.Y. yelled, returned, and then left again.

Roughly 30 minutes later, J.Y. told her uncle that Yang touched her vagina and it hurt. She also told her brother what happened.

J.Y.'s brother told their parents one week later because he had forgotten about it. After speaking with J.Y., J.Y.'s mother called the police.

Police officers spoke with J.Y. and her parents. After establishing J.Y.'s competency, specifically that she knew the difference between a truth and a lie, the responding officer asked her if anything happened to her. J.Y. responded to the officer that "Uncle Fong or Grandpa Fong"[3] got under a blanket with her and started rubbing her vagina.

J.Y. participated in an MDIC interview roughly two weeks after the incident. During this interview, J.Y. described two occasions when Yang touched her – one in February of "last year" and one in March 2012.

Yang was charged via an information with two counts of oral copulation or sexual penetration with a child 10 years of age or younger (Pen. Code, § 288.7(b)) and two counts of committing a lewd act upon a child. (Pen. Code, § 288(a).) The information also alleged Yang suffered a prior conviction for rape in 1989 and that he was a habitual sex offender within the meaning of Penal Code section 667.71.

Prior to trial, the prosecution moved in limine to admit J.Y.'s statements made during the MDIC interview pursuant to section 1360. Defense counsel objected. After a

---

**3** Yang's familial relationship to J.Y. is unclear. In the MDIC interview, J.Y. referred to Yang as her "grandpa" but also stated she thought Yang was "my grandpa or uncle." At trial, J.Y. referred to him as "Fong" and stated "he was a family member" during cross-examination. J.Y.'s brother referred to Yang as "Uncle Fong" in his testimony at trial and stated Yang was a friend of his grandparents. On the other hand, J.Y.'s mother called Yang "grandpa" and testified he was related to J.Y's father.

hearing outside the presence of the jury, the trial court admitted the interview upon the condition that J.Y. testified first.

A jury convicted Yang on all counts and Yang admitted his prior serious felony conviction for rape.

At sentencing, Yang's counsel made an oral *Romero* motion requesting the trial court strike his prior conviction for rape. The court denied the motion.

On September 6, 2019, the trial court sentenced Yang to a total indeterminate term of 100 years to life. It awarded him 2,727 days of presentence custody credits. Yang timely filed his notice of appeal.

## DISCUSSION

### I. The Trial Court Properly Admitted the MDIC Interview Into Evidence

Yang challenges the trial court's admission of J.Y.'s statements made during her MDIC interview. Yang claims this interview allowed the jury to hear allegations concerning the February incident that it otherwise would not have. Consequently, Yang asks us to reverse his convictions on counts 2 and 4.

#### A. Relevant Factual Background

The prosecution moved in limine to admit J.Y.'s statements made during the MDIC interview pursuant to section 1360. The prosecution argued the statements were admissible because the MDIC interviewer established J.Y. understood the difference between a truth and a lie, spontaneously disclosed the molestation, and was consistent in her statements to her family, law enforcement, and the MDIC interviewer.

During a lengthy hearing, the court viewed the interview. Defense counsel argued there was insufficient indicia of reliability to the interview as the court could not be satisfied of J.Y.'s lack of motive to fabricate the charges against Yang. Defense counsel also questioned J.Y.'s competency to testify and whether the interview demonstrated spontaneity or consistent repetition.

The court determined it would "allow the MDIC to be played for the jurors to hear and see as long as, obviously, [J.Y.] has testified." The court recited several indicia of reliability, including that J.Y. was spontaneous in her answers in the MDIC interview and "her mental state appeared to be on focus to the subject in question." The court found J.Y. did not use "unexpected terminology" for a child of similar age and was "astute in her observations and didn't feel limited in expressing herself." The court further found no apparent motive to fabricate and deemed her competent to testify. Accordingly, the trial court ruled "it is after the child testifies that the MDIC may be played."

The prosecution played the MDIC interview during direct examination of Investigator Virginia Rodriguez. During the interview, J.Y. responded that she received a "bad touch" at her grandmother's house and referred to this person as her "grandpa or uncle" and called him Fong. J.Y. told the interviewer Fong first gave her a bad touch in February of "last year." This occurred in her grandmother's living room while J.Y. watched Spongebob. She identified where Fong touched her and stated he stopped when he heard someone coming. J.Y. went on to tell the interviewer that Fong touched her "inside of her" and she was too scared to tell anyone.

As to the second instance, J.Y. stated that Fong touched her under her clothes and that she later told her uncle that Fong touched her "in [her] privacy." She reported that she said "ow" when Fong touched her there. J.Y. also told the interviewer Fong touched her "inside" of her privacy.

**B.    Applicable Law and Standard of Review**

Section 1360 " 'creates a limited exception to the hearsay rule in criminal prosecutions for a child's statements describing acts of child abuse or neglect, including statements describing sexual abuse.' " (*People v. Mitchell* (2020) 46 Cal.App.5th 919, 927, quoting *People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367.)

Section 1360 states in relevant part:

"(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

"(1) The statement is not otherwise admissible by statute or court rule.

"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

"(3) The child …:

(A) "Testifies at the proceedings."

We review a trial court's decision to admit evidence under section 1360 for abuse of discretion. (*People v. Brodit* (1998) 61 Cal.App.4th 1312, 1329 (*Brodit*) [reviewing trial court's decision to admit evidence pursuant to § 1360 for abuse of discretion]; *People v. Roberto V.*, *supra*, 93 Cal.App.4th at p. 1367 ["We review a trial court's admission of evidence under section 1360 for abuse of discretion."].)

It has also been held that a trial court's findings concerning indicia of reliability are subject to independent review on appeal where the confrontation clause is implicated. (*People v. Tatum* (2003) 108 Cal.App.4th 288, 296; *People v. Eccleston* (2001) 89 Cal.App.4th 436, 445-446 (*Eccleston*); *Brodit*, *supra*, 61 Cal.App.4th at p. 1330 [applying abuse of discretion standard to trial court's finding hearsay statements were reliable for purposes of § 1360].) Notably, the cases so holding cite *Lilly v. Virginia* (1999) 527 U.S. 116, 136, as authority for that proposition. In *Lilly*, however, the United States Supreme Court followed the standard set forth in *Ohio v. Roberts* (1980) 448 U.S. 56, which conditioned the admission of hearsay evidence on whether it fell "within a firmly rooted hearsay exception" or bore "adequate 'indicia of reliability.' " (*Id.* at p. 66;

6.

see *Lilly v. Virginia*, *supra*, at pp. 124-125 (plur. opn. of Stevens, J.).) *Roberts* in turn was abrogated by *Crawford v. Washington* (2004) 541 U.S. 36, 60-62, thereby rendering *Lilly* "a dead letter" (*U.S. v. Smalls* (10th Cir. 2010) 605 F.3d 765, 773).

Where, as here, the hearsay declarant testifies at trial and is subject to cross-examination, the confrontation clause has no application at all. (*People v. Clark* (2016) 63 Cal.4th 522, 601.) Under these circumstances, the determination under section 1360 appears to be a matter of state evidentiary law reviewed like most other questions of admissibility, for abuse of discretion. (See *In re Cindy L.* (1997) 17 Cal.4th 15, 35 (*Cindy L.*) [applying abuse of discretion standard to admissibility of hearsay evidence under judicially created child dependency exception].) We need not make this determination since our conclusion in the present case would be the same under either standard.

### C. Analysis

Yang's argument focuses on the fact that the trial court did not find J.Y. "consistently repeated" allegations concerning the February incident. According to Yang, absent a finding of consistent repetition, the court could not find J.Y.'s statements at the MDIC provided a sufficient indicia of reliability under section 1360, subdivision (a)(2). We disagree.

*Brodit* identifies four nonexclusive factors regarding the "sufficient indicia of reliability" prong contained in section 1360, subdivision (a)(2): "(1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; and (4) lack of motive to fabricate." (*Brodit*, *supra*, 61 Cal.App.4th at p. 1329.) This is derived from the California Supreme Court's opinion in *Cindy L.*, wherein the court discussed these factors as "relevant to the reliability of hearsay statements made by child witnesses in sexual abuse cases." (*Cindy L.*, *supra*, 17 Cal.4th at p. 29.)

*Cindy L.*, in turn, cited to the United States Supreme Court's opinion in *Idaho v. Wright* (1990) 497 U.S. 805, which discussed these factors in connection with the Sixth Amendment's confrontation clause. (*Idaho v. Wright, supra*, at pp. 821-822.) The *Wright* court elaborated that "[t]hese factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors" and, accordingly, it declined "to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under" the Sixth Amendment's confrontation clause." (*Idaho v. Wright,* at p. 822.)

Yang points to the fact the trial court did not make a finding on "consistent repetition." Elsewhere, Yang emphasizes the fact that the trial court restricted Deputy Stricker's testimony in front of the jury to the March 2012 incident because the court (in response to a clarifying question from the prosecution) found J.Y's statements to Deputy Stricker and her statements made during the MDIC interview regarding the February incident not sufficiently consistent.[4]

However, our review of published decisions on section 1360 underscores that not every factor described above must be apparent to find a statement sufficiently reliable under section 1360, subdivision (a)(2). For example, in *Brodit*, the First District deemed the victim's statements "not exactly spontaneous" but the victim consistently repeated

---

[4] The court stated, "I'm making my ruling as to the March 25th, 2012 incident only. Not to the February, 2012 or possibly 2011 [incident], cause I haven't heard any further information on that." The record indicates the court made this finding because "in the MDIC, I believe, the testimony was – or the statement was" that the February incident occurred in 2012.

Outside the presence of the jury, Deputy Stricker testified J.Y. did not know whether the February incident occurred in 2011 or 2012 when he asked. In the MDIC interview taken in 2012, J.Y. stated the February incident occurred "last year", but that she also did not know what year "last year" was.

Yang's emphasis on the court's findings with respect to Deputy Stricker's testimony is largely irrelevant for purposes of the instant appeal because the court made this finding after it already deemed the MDIC interview admissible.

8.

them.  (*Brodit*, *supra*, 61 Cal.App.4th at p. 1330.)  Accordingly, the Court of Appeal concluded the trial court did not abuse its discretion when it admitted the victim's statements under section 1360.  (*Brodit*, *supra*, at p. 1330.)  Similarly, in *Eccleston*, the Court of Appeal upheld the trial court's findings on the reliability of the victim's statements made during an interview even though the Court of Appeal found the record on the victim's mental state (factor 2) "mixed."  (*Eccleston*, *supra*, 89 Cal.App.4th at p. 447.)  Thus, the reliability of J.Y.'s statements did not depend on a finding that J.Y. consistently repeated them.

The record supports the trial court's finding that there was sufficient indicia of reliability to admit the MDIC interview.  We note the trial court made its findings after it watched the MDIC interview in full.  We agree with the trial court that J.Y. provided spontaneous answers during the MDIC interview and the record supports that finding.  For example, J.Y. stated to the MDIC interviewer that "Grandpa Fong" inappropriately touched her two times and "the first day it was on February" and that he stopped because "he heard someone coming."  We also agree with the trial court's finding on J.Y.'s mental state during the interview in that the record clearly establishes J.Y. was responsive and understood the questions presented to her.  Additionally, we agree J.Y. used standard terminology for a seven year old such as "privacy" and she also explained Yang touched her where girls "use the bathroom."  Moreover, our review of the record reveals no apparent motive to fabricate and so we agree with the trial court's finding on that point as well.

In sum, we agree with the trial court that J.Y.'s statements at the MDIC meet the criteria for reliability under section 1360, subdivision (a)(2), and we find no error in the admission of the interview into evidence.

## II.     Yang's *Romero* Motion

Yang claims the trial court erred in denying his *Romero* motion made orally at sentencing to strike his prior serious conviction for rape in 1989.  He asks us to reverse the trial court's ruling.  We decline to do so.

### A.  Relevant Factual Background

The information alleged Yang suffered a prior serious conviction for rape pursuant to Penal Code section 261, subdivision (a)(2).  Yang admitted he suffered this "strike prior" conviction.

At sentencing, defense counsel requested the trial court stay Yang's prior strike because the conviction was "old" and "played no part in this case."  Accordingly, defense counsel asked the court to "exercise its own discretion and stay the strike and impose [the] minimum sentence imposed by law on" Yang.

The court denied Yang's motion, noting Yang provided no written submission for the court to consider.  In denying the motion the court remarked it "disturbs the Court to see that a person who served what appears to be [a] substantial period of time in state prison" for a prior rape conviction would take advantage of a trust position twice.  The court found the facts of this case signified more "risk taking" and danger on Yang's part.  The court also expressed concern about Yang's mental health issues, specifically the fact that he "increased his criminality" and failed to show reformation or remorse.  Accordingly, the court concluded Yang was not "an appropriate individual for [*Romero* consideration]."

The trial court sentenced Yang to 100 years to life on counts 3 and 4 and stayed the sentences for counts 1 and 2 pursuant to Penal Code section 654.

### B.  Standard of Review

A trial court may strike a prior felony "strike" conviction pursuant to Penal Code section 1385 in the furtherance of justice.  (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.)  Our Supreme Court instructs courts faced with *Romero* motions to consider "whether, in

light of the nature and circumstances of [Yang's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, [that Yang] may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

On appeal, we review the trial court's decision on a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) An abuse of discretion occurs when the trial court reaches a decision "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) The defendant bears the burden of demonstrating this. (*Ibid.*) Moreover, we presume the trial court "acted to achieve legitimate sentencing objectives" and we will not reverse a trial court's decision " ' "merely because reasonable people might disagree." ' " (*Ibid.*)

### C. Analysis

Yang falls well short of his burden to demonstrate the trial court abused its discretion when it denied his *Romero* motion. He points to various factors such as the length of time that passed between his prior strike and the present offense, claiming that he was a law abiding citizen for 22 years. Yang also mentions his Static 99R test that suggested he was unlikely to offend again.

None of these factors lead us to the conclusion that the trial court's ruling was irrational or arbitrary. To the contrary, we find its reasoning sound. The trial court's observation that Yang committed the offenses in an "abrasive" manner is supported by the evidence. We agree his most recent sex offenses – committed against a minor – represent "increased criminality." We also note the trial court observed Yang showed no remorse for his actions. Accordingly, the trial court acted well within its discretion when it denied Yang's oral *Romero* motion. (*People v. Poslof* (2005) 126 Cal.App.4th 92, 108 [defendant's prior criminal behavior combined with "background, character, and

11.

prospects" did not show he was outside the "spirit" of Three Strikes law and so trial court properly denied the defendant's *Romero* motion].)

## III.  Abstract Should be Corrected to Reflect Additional Presentence Custody Credit

Yang's final issue claims his presentence custody credit was improperly calculated and he is entitled to an additional 40 days of custody credit.  The People agree this is the correct result.

Yang's probation report indicates there is a simple miscalculation in the "total days" portion of his presentence credits.  Based on Yang's 2,317 days of jail confinement, 103 days at Atascadero State Hospital, and 347 days of good time/work time credit, Yang is entitled to 2,767 days of presentence credits, but the probation report only lists 2,727 days of presentence credits.  Therefore, we agree Yang is entitled to an additional 40 days of credit.

## DISPOSITION

The trial court is ordered to prepare an amended abstract of judgment reflecting 2,767 days of presentence custody credits and to forward it to the appropriate authorities. The judgment is affirmed in all other respects.

SMITH, J.

WE CONCUR:


DETJEN, Acting P. J.


SNAUFFER, J.