[No. A096250. First Dist., Div. Three. June 13, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS HENRY LeCORNO, Defendant and Appellant.

**COUNSEL**

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Eric D. Share and Nancy H. Tung, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POLLAK, J.**—Defendant Douglas Henry LeComo appeals from his conviction for failing to register as a sex offender under Penal Code section 290.[1] Defendant duly registered his residence address in San Francisco but did not register as a second residence the home of a friend in San Mateo where he often stayed while doing construction work at the home. He contends his conviction must be reversed because (1) he was found guilty of a nonexistent offense; (2) the trial court refused to instruct the jury that defendant willfully violated the statute only if he knew that he was required to register the San Mateo address, and, in response to questions from the jury told them that such knowledge was not necessary; (3) the trial court improperly instructed the jury concerning the use of circumstantial evidence as it applies to the mental state required for the registration offense; and (4) the court abused its discretion by failing to dismiss all of his prior strikes and by imposing the upper term on the registration offense. We reject defendant's first contention, but agree that the trial court committed prejudicial instructional error with respect to the knowledge that is required to establish a violation of section 290. Accordingly, we shall reverse the conviction and do not reach defendant's contentions concerning his sentencing.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with failing to register as a sex offender in violation of section 290, subdivision (a)(1), between August 1 and October 24, 2000. Defendant was also charged with three prior felony convictions under section 1170.12, subdivision (c)(2), and two prior prison term enhancements under section 667.5. At trial, the parties stipulated that defendant's prior conviction for statutory rape required him to register as a sex offender under section 290.

Officer Ariel Maracha testified that he was responsible for registering sex offenders for the San Francisco Police Department and that on July 7, 2000, he had helped defendant register. He described the registration process generally, which involves having the registrants fill out the front of a standard form and read and initial certain advisements on the back of the form. The back of the form advised the registrant, "If I have more than one residence address or location, I must register all addresses and/or locations with the agency or agencies having jurisdiction over them." Maracha explained that as part of the typical registration process, after the registrant fills out the form, "We ask the subjects if any questions that arise, and we basically try to explain to them in a simple matter in terms of explaining

---

[1]All statutory references are to the Penal Code unless otherwise noted.

what the statements are in the back of the form." On cross-examination, Maracha explained that if a registrant asks what is meant by "residence," he responds, "Well, that's where a person lives at that moment of time." He also acknowledged he had told some registrants that residence means "where you spend the most time." He could not remember, however, whether he had told that to defendant.

The prosecutor offered into evidence an enlarged copy of the form filled out by defendant on July 7, 2000. On the form, defendant listed his address as 1831 Santiago Street in San Francisco. He listed the same address on a second line that asked for the registrant's "concurrent" address. Defendant initialed that he had read and understood the advisement on the back of the form regarding multiple residences. Defendant filled out this standard form in the same way when he registered again on October 11, 2000.

Sometime in July 2000, while residing at the Santiago Street address that he had listed on the registration form, defendant visited his friends, Cheryl and Ron Meagher, at their home in San Mateo. During that visit he agreed to help convert the basement of the home into a room for the Meaghers' son. Ron and defendant began working on the project a few weeks later. Ron offered to let defendant sleep on the floor and for the next few weeks defendant spent one or two nights a week on the Meaghers' floor. On August 16, 2000, defendant moved some of his belongings out of a rented storage locker and into the basement. A few days later, the Meaghers moved a bed into the basement for defendant to sleep on when he spent the night. Defendant stayed at the house from August 19 to 26, while the Meaghers were on vacation, and when they returned he stayed at their home three to four nights a week. Ron testified that defendant had received some mail there but that he had told defendant to have his mail sent to his San Francisco address. After defendant told Ron that he was having some problems with his San Francisco address because someone had found out about his sex offender status, defendant began staying in San Mateo four to five nights a week. The Meaghers testified that they assumed defendant would stay at their home until December when the basement room was finished and their son moved into it.

Inspector Jim Zerga of the San Francisco Police Department testified that he went to defendant's San Francisco residence on October 20, 2000, to investigate defendant's compliance with the registration requirements. Defendant's landlord said he lived there, but that he was not home. Zerga stayed at the house for four hours and returned on two other occasions but never saw defendant there. On October 23, Zerga went to defendant's place of employment and defendant's employer told him that while defendant used the

Santiago Street address on his job application, he was actually living with friends near Redwood City. Zerga investigated and eventually located defendant at the Meaghers' home in San Mateo. On October 25, the police executed a search warrant on the San Mateo home. In the basement room detectives found several letters with return addresses bearing defendant's name and the San Mateo address. They also found a checkbook with checks bearing defendant's name and the San Mateo address. The police arrested defendant that night.

Defendant called a number of witnesses who testified that he lived in San Francisco. Defendant also testified in his own defense. He explained that he moved his belongings out of storage and into the Meaghers' home to save money and to give him some space to sort through and throw away things he no longer wanted. He disputed that he spent more than two to three nights a week at the Meaghers' house, and explained that he started sleeping in San Mateo only because he was staying up late working on the basement and was too tired to drive home. He also testified that while he wrote the letters using the San Mateo return address, he was just playing on Ron's computer and was not going to mail the letters because they had the San Mateo address on them.

With regard to his understanding of the registration requirements, defendant testified that when he registered in July 2000, he had a conversation with Maracha about the definition of residence. Maracha told him, "where you spend the most time is where you register." He said that he originally asked what was considered a residence because he was thinking of starting a business and wanted to know whether it would be considered a residence if he slept there some nights. He also testified he later returned to the police department to confirm his understanding of the requirements because he had started spending a few nights in San Mateo and did not want to establish a residence there because he feared the reaction of the neighbors. Cheryl Meagher testified and confirmed defendant's testimony that he was intentionally not spending too many nights at their house so as to avoid it being considered his residence.

The court instructed the jury on the crime of failing to register as follows: "Defendant is accused in count 1 of having violated Penal Code section 290, subdivision (a), subdivision (1), a felony. [¶] Any person required to register as a sex offender must register with the law enforcement agency of the city in which he or she resides within 5 working days of changing residences. [¶] If the person has more than one residence at which he or she resides, he or she must register with the law enforcement agency in each of the cities in which he or she resides. Failure to do so is a violation of Penal

Code section 290(a)(1). [¶] As used in these instructions, the term residence means a temporary or permanent dwelling place which one keeps and to which one intends to return, as opposed to a place where one rests or shelters during a trip or transient visit. [¶] Depending upon the circumstances, one may have a single place of residence or more than one place of residence. [¶] One who has one place of residence and then adds a second place of residence has changed his residence within the meaning of this law and has a duty to report this change resulting in an additional residence even though he may also maintain a residence at the old place. [¶] In order to find a violation of Penal Code section 290(a)(1), each of the following elements must be proved: [¶] 1. The defendant has a prior conviction for a sexual offense; [¶] 2. As a result of that conviction, the defendant is required to register as a sex offender; [¶] 3. The defendant had actual knowledge of his duty to register as a sex offender; [¶] 4. The defendant obtained a new or additional residence; [¶] 5. The defendant willfully and knowingly failed to inform in writing the law enforcement agency in the City of his change of residence of his new or additional residence within 5 working days."

The court also gave CALJIC Nos. 1.20 and 3.30 as follows: "The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. The word 'willfully' does not require any intent to violate the law, or to injure another, or to acquire any advantage." "In the crime charged in Count[] 1, a violation of Section 290(A)(1) of the Penal Code, namely Failure to Register as a Sex Offender, there must exist a union or joint operation of act or conduct and general intent. General intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general intent, even though he may not know that his act or conduct is unlawful."

The court rejected defendant's request to instruct that, in order to find defendant guilty, the jury must find that he had actual knowledge that he was required to register with the City of San Mateo. The court explained, "I do not believe that [*People v.*] *Garcia* [(2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590]] stands for the proposition that the prosecution has to . . . prove that the defendant had actual knowledge that he must register at an additional residence."

During deliberations the jury submitted two questions to the court regarding the requisite knowledge. The first asked, "If the defendant was fully aware of his obligation to register as a sex offender but believed that the San Mateo address was not a residence for him, did he have actual knowledge of

his duty to register as a sex offender in San Mateo?" The second question was paraphrased by the court as asking whether "any of the following factors have any bearing on the defendant's obligation to register as a sex offender again in San Mateo County; one his own understanding of what a residence or concurrent address is. [¶] . . . [¶] Number two, anything that Ariel Maracha may have told him with respect to what a residence or concurrent address is. [¶] . . . [¶] Number three is his own belief of whether the San Mateo address was a residence for him." The court agreed with the district attorney that curative instructions were necessary as "the court has said over and over and over again that it does not require actual knowledge to register at a second address or second residence." The court gave the following supplemental instructions to the jury: "It is not necessary that the prosecution prove that the defendant believed he had established a legal residence in order to prove that the defendant had actual knowledge of his duty to register as a sex offender. It is not necessary that the prosecution prove that the defendant had actual knowledge of the legal definition of residence in order to prove that the defendant had actual knowledge of his duty to register as a sex offender. [¶] And with regard to weighing, you asked specifically—you asked about a particular witness [i.e., Ariel Maracha] and how that factored into the equation, and I would direct you back to the circumstantial evidence instructions, direct and circumstantial, and also tell you that that's how you weigh the different pieces of evidence of the witness' testimony. It is within your purview of how much weight you give to any specific testimony or evidence, that is for you to decide."[2]

The jury found defendant guilty of failing to register. The court conducted a trial on the prior conviction allegations and found them to be true. Defendant moved to strike his prior convictions, in response to which the court struck two of the three prior convictions. The court sentenced defendant to the upper term of three years, doubled because of the prior strike, plus one year for the prior prison term enhancement, for a total commitment of seven years. Defendant filed a timely notice of appeal.

---

[2]The trial court refused to give the responses proposed by defendant. In response to the first question, whether defendant had actual knowledge of his duty to register in San Mateo if he believed that the San Mateo address did not constitute a legal residence for him, defendant proposed the following response: "No. In order to have actual knowledge of a duty to register the defendant must have actual knowledge that he has established a new residence." Defendant proposed the following response to the second question: "The Prosecution must prove that the Defendant 'willfully' failed to register in San Mateo within the requisite time. 'Willfully' means 'with a purpose . . . to make the omission in question.' If the Defendant did not believe the San Mateo address constituted a residence then his failure to register would not be willful and you must acquit."

## DISCUSSION

### 1. *Defendant Was Convicted of Failing to Register Under Section 290.*

██ Initially, we reject defendant's argument that he was convicted of a nonexistent offense. Defendant contends that when a registrant acquires a new residence in one city while retaining an old residence in another city, he is obligated under section 290 to perform two acts. First, under section 290, subdivision (a)(1)(A) and (B),[3] he must register the new residence address with the law enforcement agency in the new jurisdiction. Second, under section 290, subdivision (f)(1),[4] he must inform, in writing within five working days, the law enforcement agency in the jurisdiction of his original residence. Nowhere under the statute is he specifically required to "inform in writing" the new jurisdiction of his new residence. While defendant's reading of the statute is perhaps correct, he is mistaken in his conclusion that he was convicted of a nonexistent offense.

Defendant was charged by information with the crime of failing to register. The jury's verdict found defendant guilty of failing to register. Defendant is correct that the court instructed the jury that in order to find a violation of section 290, it was necessary to prove that "defendant willfully and knowingly failed to inform in writing the law enforcement agency in the city of his change of residence of his new or additional residence within 5 working days." The court did misstate the registration element of the offense, in that defendant was required to register in San Mateo, not merely inform the local authorities in writing of his new address. However, the

[3]Section 290, subdivision (a)(1), reads in relevant part: "(A) Every person described in paragraph (2), for the rest of his or her life while residing in . . . California . . . shall be required to register with the chief of police of the city in which he or she is residing . . . within five working days of coming into, or changing his or her residence or location within, any city, county, or city and county, or campus in which he or she temporarily resides, or, if he or she has no residence, is located. [¶] (B) If the person who is registering has more than one residence address or location at which he or she regularly resides or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdictions in which he or she regularly resides or is located. If all of the addresses or locations are within the same jurisdiction, the person shall provide the registering authority with all of the addresses or locations where he or she regularly resides or is located."

[4]Section 290, subdivision (f)(1), reads: "If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location. The law enforcement agency or agencies shall, within three days after receipt of this information, forward a copy of the change of address or location information to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence or location."

reference to informing law enforcement in writing rather than to "registering" was clearly harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; *People v. Flood* (1998) 18 Cal.4th 470, 504 [76 Cal.Rptr.2d 180, 957 P.2d 869]). The evidence was undisputed that defendant neither registered nor informed the San Mateo Police Department in writing of his additional residence in that jurisdiction. Had defendant registered in San Mateo, he necessarily would have informed the proper authorities in writing of his new address. By finding that defendant had not informed the San Mateo authorities of his new address, the jury necessarily found that he did not register there.

2. *The Trial Court Failed to Properly Instruct the Jury on the Element of Knowledge.*

While the issue was contested at trial, defendant does not dispute that there was substantial evidence to support the jury's finding that he had in fact established an additional residence in San Mateo. ■ He does contend that the trial court erred in instructing the jury that he willfully failed to register there even if he did not believe that he had acquired a second residence and was required to register in San Mateo. We agree with this contention.

In *Garcia*, the California Supreme Court held that a defendant must have actual knowledge of the duties imposed by section 290 in order to willfully violate the statute. (*People v. Garcia, supra*, 25 Cal.4th at p. 752.) There, the jury had been instructed with CALJIC No. 1.02, and with CALJIC No. 4.36, that "[w]hen the evidence shows that the person voluntarily did that which the law declares to be a crime, it is no defense that he did not know that the act was unlawful or that he believed it to be lawful." (25 Cal.4th at p. 751.) In holding the instructions to have been erroneous, the court explained, "In a case like this, involving a *failure* to act, we believe section 290 requires the defendant to actually know of the duty to act. Both today and under the version applicable to defendant, a sex offender is guilty of a felony only if he 'willfully violates' the registration or notification provisions of section 290. [Citations.] The word 'willfully' implies a 'purpose or willingness' to make the omission. [Citation.] Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed." (25 Cal.4th at p. 752.)

In *People v. Edgar* (2002) 104 Cal.App.4th 210, 220-221 [127 Cal.Rptr.2d 662], the Court of Appeal reversed a conviction under section 290 for failing

to register a second residence because "the court gave no instructions that required the jury to find that appellant actually knew that staying at a transient hotel or homeless shelter, even on a temporary basis, while still maintaining his residence at the Clarinada Avenue address, required notification of law enforcement. On the contrary, the court's special instruction informing the jury that a person has 'changed' his residence pursuant to section 290 by adding a second residence address, in conjunction with the other instructions in this case,[5] entirely removed from the jury the issue whether appellant had knowledge that acquiring an additional residence required an additional registration."[6]

The present case is remarkably similar to *Edgar*. Without addressing the sufficiency of the initial instructions to advise the jury that the defendant must have had actual knowledge of the duty to register in order willfully to violate section 290, the remainder of the instructions told the jury something very different. Not only did the trial court refuse to instruct that defendant must have known that he was required to register in San Mateo, but the supplemental instructions in response to the jury's questions told the jury explicitly, and incorrectly, that it was *not* necessary for defendant to have believed that he had established a legal residence in San Mateo and was required to register there. It is nonsensical to say that in order to purposefully fail to register, defendant must have knowledge only of an abstract duty to register, but that he need not know what that means or how it applies to his circumstances. If defendant did not know that he had become a resident of San Mateo and therefore was required to register there, it hardly matters that he was aware that there was a duty to register under other circumstances. While defendant admittedly knew there was a duty to register— somewhere—he *did* register, in San Francisco. Defendant was convicted of

---

[5]The Court of Appeal in *Edgar* concluded that the trial court had erred in instructing the jury with CALJIC No. 1.20 and CALJIC No. 3.30, which "like the ' "ignorance of the law is no excuse" ' instruction (CALJIC No. 4.36) given in *Garcia*, . . . 'on its face would allow the jury to convict [appellant] of failing to register even if he were unaware of his obligation to do so.' " (*People v. Edgar, supra,* 104 Cal.App.4th at p. 219, quoting *People v. Garcia, supra,* 25 Cal.4th at p. 754.) In *People v. Barker* (2003) 107 Cal.App.4th 147 [131 Cal.Rptr.2d 801], review granted June 11, 2003, S115438, a divided panel of this division reached a contrary conclusion.

[6]The court also noted that during the time period applicable in *Edgar*, unlike in the present case, section 290 did not address multiple residences, so that the documents explaining the registration requirements provided no notice that adding a second residence constitutes a "change" of residence under section 290. (*People v. Edgar, supra,* 104 Cal.App.4th at p. 220.) The additional information added to the form in response to the intervening amendment of the statute constitutes evidence not available in *Edgar* that the defendant did know that he was required to register at the second address. However, neither the amendment to the statute nor the additional evidence changes the legal standard recognized in both *Garcia* and *Edgar* that the prosecution must prove that the defendant had "actual knowledge" of the duty to register.

failing to register a second time, *in San Mateo*; what matters is whether he knew he was supposed to register *there*. "[I]n order to willfully violate section 290 the defendant must actually know of his duty to register." (*People v. Garcia, supra,* 25 Cal.4th at p. 754.)

 . Contrary to the Attorney General's argument, recognizing that defendant must have actual knowledge of his duty to register in San Mateo, where he failed to register, does not transform the violation of section 290 from a general intent crime into a specific intent crime. While defendant need not intend to violate the law, i.e., he need not know the penal consequences of failing to register, he must have actual knowledge that he is required to register and willfully fail to do so. (*People v. Garcia, supra,* 25 Cal.4th at pp. 751-754.) Because the intent required for a general intent offense "is the purpose or willingness to do the act or omission" in question, the willfulness element of section 290 may be satisfied only "by a purposeful or willing omission." (*People v. Johnson* (1998) 67 Cal.App.4th 67, 72 [78 Cal.Rptr.2d 795].) An omission is neither purposeful nor willing if it is based upon ignorance of the requirements of the law.

The Attorney General argues further that defendant's subjective misunderstanding of the need to register in San Mateo as well as in San Francisco does not negate the willfulness necessary to establish a violation of the statute. *Garcia,* however, explicitly rejected the suggestion that a violation of section 290 could be based upon a theory of criminal negligence or other objective standard. (*People v. Garcia, supra,* 25 Cal.4th at p. 752.) The court explained, "In other contexts, we have explained that under the objective criminal negligence standard, we presume that defendants have knowledge if reasonable persons in their position would have appreciated the risks. [Citation.] But these cases generally involved affirmative acts, not a mere *failure* to act. . . . This case involves a legally imposed duty to act. Defendant's guilt here turns not on anything he did, but on what he did not do." (*Ibid.*) For this reason "actual knowledge" of what the statute requires is necessary to establish a violation. (*Ibid.*)

The Attorney General's reliance on *People v. Johnson, supra,* 67 Cal.App.4th at page 73, is also misplaced. *Johnson* does not hold that misinformation does not excuse a person's obligation to register. In *Johnson,* the court specifically states, "The instructions given by the trial court permitted the jury to find that defendant's failure to register was not willful, but rather the result of misinformation and lack of transportation. The jury did not so find." (67 Cal.App.4th at p. 73.) The court held that while there was some confusion as to the location and the time period within which

defendant was to register, he was advised by his parole officer to get further instructions and his deliberate indifference to that advice was sufficient to support the jury's finding of a willful failure to register. (*Id.* at pp. 72-73.) Thus, rather than supporting the propriety of the instructions given in this case, *Johnson* underscores the necessity of permitting the jury to determine whether the defendant understood what the statute required of him, which the instructions in this case precluded. Moreover, unlike the situation in *Johnson,* there was no evidence in this case of indifference on defendant's part, but substantial evidence that defendant was misinformed by the police officer charged with giving him the necessary instructions.

As in *Edgar*, the trial court's instructional errors were highly prejudicial, and certainly not harmless beyond a reasonable doubt. (*Chapman v. California, supra,* 386 U.S. at p. 24 [87 S.Ct. at p. 828].) While there was evidence that defendant received notice of the obligation to register additional residences, there was also substantial evidence that the defendant was misinformed as to the circumstances under which the obligation arises and that he did not understand the meaning of a residence as used in section 290. From the very face of the registration forms defendant signed in San Francisco on July 7 and October 11, 2000, it is apparent that he did not properly understand the terminology, since he entered the San Francisco address twice on each form, once where the form requested his address and again where the form called for his "concurrent" address. Defendant testified that he understood the request for a concurrent address to mean "concurrent like living now"—i.e., "current," rather than "concurrent." More importantly, defendant testified that when he registered in July 2000 he was told that his residence was "where you spend the *most* time." (Italics added.) The employee responsible for registering sex offenders for the San Francisco Police Department confirmed that while he did not remember his conversation with defendant, he had given this incorrect instruction to individuals registering at that time. Thus, there was strong evidence to support a finding that defendant did not know that the nights he spent sleeping in his friend's basement made the San Mateo address a second residence, and therefore that he did not know that he was required to register in San Mateo. From the questions submitted to the court during deliberations, it seems most likely that this was the view of the jury.[7] There is thus a high probability that the verdict would have been different if the correct instructions had been given. Accordingly, defendant's conviction must be reversed.

[7]A letter written to defense counsel by a member of the jury and presented to the court in conjunction with defendant's new trial motion emphasizes the reluctance with which the jury rendered its verdict. The letter reads in part, "A few of the Jurors have begun an effort to petition the Judge for leniency in her sentencing of Mr. LeCorno. . . . The starkness of our verdict of 'guilty' cannot begin to describe our reluctance to issue it or the depth of our empathy for Mr. LeCorno's situation."

### 3. The Instructions Regarding Circumstantial Evidence Do Not Provide an Independent Basis for Reversal.

Defendant also contends that the trial court erred in refusing to instruct on the use of circumstantial evidence to prove a mental state according to CALJIC No. 2.02,[8] and instead giving the more general instruction concerning circumstantial evidence according to CALJIC No. 2.01.[9] He also argues that the court erred in failing to give CALJIC No. 3.31.5, in which the mental state for the particular offense must be inserted with the further explanation that "unless this mental state exists the crime to which it relates is not committed." However, "there is no need to give CALJIC No. 2.02 when the trial court gives a more inclusive instruction based upon CALJIC No. 2.01, unless the only element of the offense that rests substantially or entirely upon circumstantial evidence is that of specific intent or mental state." (*People v. Hughes* (2002) 27 Cal.4th 287, 347 [116 Cal.Rptr.2d 401, 39 P.3d 432].) As the defendant acknowledges, his mental state was not the only issue as to which circumstantial evidence was presented—his residence was another—so that there was no error in using the more inclusive CALJIC No. 2.01 rather than No. 2.02. Finally, had correct instructions been given with respect to the knowledge requirement, CALJIC No. 3.31.5 would have been redundant, and there would have been no error in failing to say the same thing twice.

---

[8]CALJIC No. 2.02 reads, "The . . . mental state with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not find the defendant guilty of the crime charged . . . unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required . . . mental state but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to any . . . mental state permits two reasonable interpretations, one of which points to the existence of the . . . mental state and the other to its absence, you must adopt that interpretation which points its absence. If, on the other hand, one interpretation of the evidence as to the . . . mental state appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (Brackets omitted.)

[9]CALJIC No. 2.01 as read to the jury provides that "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

## DISPOSITION

The judgment is reversed.

McGuiness, P. J., and Parrilli, J., concurred.