178 Cal.App.4th 1442 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
SHAWN MAURICE COHENS, Defendant and Appellant.
No. E045468.
Court of Appeals of California, Fourth District, Division Two.
November 9, 2009.
As modified December 1, 2009.
*1444 Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Alana Cohen Butler and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RAMIREZ, P. J.
The jury convicted defendant and appellant Shawn Maurice Cohens of willful infliction of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a))[1] and failure to register as a sex offender (§ 290, former subd. (a)(1)(B)).[2] Defendant was sentenced to a total term of five years.
With respect to the failure to register charge, defendant contends that the trial court erred by failing to instruct the jury that the People were required to prove he actually knew he was required to register the particular address involved. Defendant does not contest on appeal his conviction for inflicting corporal injury. We agree with defendant, but the error is harmless, so we affirm.

I. BACKGROUND
Defendant is a person required to register as a sex offender. Defendant's most recent registration form indicated only a residence located on Alessandro Boulevard in Moreno Valley (Alessandro address).
Defendant's former girlfriend (the victim) lived at her apartment located on Frederick Street in Moreno Valley (Frederick address). She testified that at the Frederick address, from December 2006 through the time of defendant's arrest in March 2007, defendant slept every night, kept his clothes, kept toiletries, received mail, helped pay rent on two occasions, and watched her children while she was at work. The victim further testified that defendant was not on the lease at the Frederick address and also kept clothing and *1445 received mail at the Alessandro address. The victim's daughter testified that defendant lived at the Frederick address, spent every night there, slept in the bedroom he shared with her mother, and kept his clothes in the closet in the bedroom he shared with her mother. A sheriff's deputy testified that he found adult male clothing in the victim's closet and letters and bills addressed to defendant at the Frederick address. A clerk from the Moreno Valley Animal Shelter testified that its records indicated defendant had adopted one dog and licensed another dog using the Frederick address.
Defendant's mother testified that after defendant's arrest the victim delivered defendant's belongings to his mother, which consisted of some papers, including resumes, two cell phones, two books, a hat, an apron, and tools, but no clothing. Defendant's mother also testified that defendant asked her to retrieve his union card and watch from the victim. The victim also returned items she had that belonged to defendant's mother. Defendant's mother further testified that she gave the victim and her children a dog on the condition that it be licensed to defendant and returned to his mother if the relationship between defendant and the victim ended. The mother testified that defendant was living at the Alessandro address, where he rented a room, had a dresser, had a half-bed, kept a closet full of clothes, received mail, and met his parents two or three times in a four-month period. Defendant's mother admitted it was "safe to assume [defendant] was spending the night at [the victim's] house" and that she did not know where defendant was spending most of his time, or whether he was spending every night at the Frederick address. Defendant did not testify.[3]
Defendant stipulated that he had been convicted of an offense that rendered him subject to the registration requirement, and that he had actual knowledge of his requirement to update his registration should he move or add a second residence. Defendant contended at trial that he did not reside at the Frederick address.
The trial court modified the relevant form instructions to instruct the jury as follows:
"1170m
"The defendant is charged in Count 3 with failing to register as a sex offender in violation of former Penal Code section 290, subdivision (a)(1)(B). *1446 Specifically, the Information alleges that the defendant, Shawn Maurice Cohens, on or about March 14, 2007, in the County of Riverside, State of California, he as a person required to register as a sex offender pursuant to Penal Code section 290, did willfully and unlawfully fail to register at all residence addresses at which he regularly resided, regardless of the number of days or nights spent there.
"To prove that the defendant is guilty of this crime, the People must prove that:
"1. The defendant was previously convicted of a sex offense. As a result, and since the date of that conviction, the defendant has been required to register as a sex offender with the sheriff of the county if he resides within a city with no police department. For the rest of his life, the defendant must register within five working days of either changing his residence or adding a second residence. (The parties have stipulated that these facts are true and need not be proven.)
"2. The defendant actually knew that, for the rest of his life, he was required (a) to register as a sex offender with the sheriff of the county if he resides within a city with no police department, and (b) to register within five working days of either changing his residence or adding a second residence. (The parties have stipulated that these facts are true and need not be proven.)
"3. The defendant resided in Riverside County, California, at [the Frederick address], in Moreno Valley, a city with no police department.
"AND
"4. The defendant willfully failed to register as a sex offender with the sheriff of Riverside County within five working days of when the defendant started to reside at [the Frederick address], Moreno Valley, California.
"Someone commits an act `willfully' when he or she does it willingly or on purpose.
"A `residence' means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there.
"250m
"Every crime at issue in this case require[s] proof of the union, or joint operation, of act and wrongful intent.
*1447 "For you to find a person guilty of the crimes charged in Counts 2 and 3, or of the lesser offense to that charged in Count 2, that person must not only commit the prohibited act or fail to do the required act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act or omission required is explained in the instruction for each crime."

II. STANDARD OF REVIEW
On appeal, jury instructions are reviewed de novo. (See, e.g., People v. Posey (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].) "`Whether a jury has been correctly instructed is not to be determined from a consideration of parts of an instruction or from particular instructions, but from the entire charge of the court.' [Citation.] Therefore, the fact that the necessary elements of a jury charge are to be found in two instructions rather than in one instruction does not, in itself, make the charge prejudicial." (People v. Rhodes (1971) 21 Cal.App.3d 10, 20 [98 Cal.Rptr. 249].) "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole." (People v. Galloway (1979) 100 Cal.App.3d 551, 567-568 [160 Cal.Rptr. 914].)

III. DISCUSSION
Defendant contends the jury instructions for the failure to register offense erroneously omitted a requirement that the People prove he actually knew he was required to register a particular address. The People contend defendant has waived this argument. We disagree with the People as to waiver and agree with defendant as to the instructional error, but find the error to be harmless beyond a reasonable doubt.

A. Instructional Error As to the Elements of an Offense Cannot Be Waived

(1) Preliminarily, we disagree with the People's assertion that defendant's failure to object to the jury instruction waives the right to appeal based on instructional error. This is because instructional error as to the elements of an offense cannot be waived by trial counsel's failure to object. (People v. Hudson (2006) 38 Cal.4th 1002, 1011-1012 [44 Cal.Rptr.3d 632, 136 P.3d 168].) Accordingly, defendant has not forfeited his right to claim instructional error as to the elements of the failure to register offense.

B. Instructing on Knowledge of the Duty to Register a Particular Address

Defendant contends that the jury instructions were erroneous because the instructions did not require that the People prove that he actually knew he *1448 was required to register the Frederick address in particular. He adds that his stipulation to having actual knowledge of his duty to register if he changed his residence or added a second residence does not fill in the gap in the instructions as to his knowledge. We agree with defendant.

1. Interpretation of Jury Instructions for Failure to Register

Because defendant raises the issue of the knowledge element in failing to register, we review three cases that have addressed this element. The first case established the general requirement of actual knowledge of the duty to register. The second and third cases address the knowledge element in the context of failing to register a second residence.[4]
In People v. Garcia (2001) 25 Cal.4th 744, 751 [107 Cal.Rptr.2d 355, 23 P.3d 590] (Garcia), our Supreme Court evaluated a defendant's claim that jury instructions erroneously did not require the jury to find that he had actual knowledge of his duty to register. In Garcia, the defendant's defense at trial "was that he was unaware he was required to register as a sex offender, and no one had advised him of that requirement." (Id. at p. 748.) However, upon pleading no contest to the offenses that required him to register, the defendant stated that he understood his duty to register pursuant to section 290. (Garcia, at p. 748.) Additionally, he had "signed, dated, and affixed his fingerprint to a `Notice of Registration Requirement'" that he had reviewed with a prison official prior to being released. (Id. at pp. 748-749.) Our Supreme Court agreed with the defendant and established the requirement that failure to register does require actual knowledge of the duty to register. (Id. at pp. 753-754.) However, the erroneous definition of "willfully" in the instructions, as well as the giving of an ignorance-of-the law-is-no-excuse instruction, was found to be harmless. The finding of harmlessness was based, first, on strong evidence that the defendant knew of his duty to register, and, second, on other instructions requiring findings that the defendant had been informed of his duty to register and he had read and signed the form stating that his duty would be explained to him. (Id. at p. 755.)
Unlike the defendant in Garcia, at trial defendant did not contend he was unaware of his registration duty in general (to which he stipulated specifically as to a changed or second residence), nor did he contend that he was unaware *1449 of his duty to register the Frederick address. Instead, his defense at trial was that he did not reside at the Frederick address, which is different from the defendant in Garcia, who did not contest his residence. Thus, while the defendant in Garcia actually testified about his unawareness of the general requirement to register, in this case the defense offered no evidence whatever as to defendant's unawareness that he resided at the Frederick address or that he had to register the Frederick address. While in Garcia defense counsel did argue the defendant's lack of knowledge of the registration requirement (Garcia, supra, 25 Cal.4th at pp. 754-755), in this case defense counsel did not argue, for example, that since defendant did not in fact reside at the Frederick address, he obviously could not have believed that he resided there.
In People v. LeCorno (2003) 109 Cal.App.4th 1058, 1067-1070 [135 Cal.Rptr.2d 775] (LeCorno), Division Three of the First Appellate District evaluated instructional error as to the actual knowledge of a defendant who had been misinformed of his registration duties. In LeCorno, the defendant registered his home address in San Francisco but did not register a second address. The second address was the house of some friends from San Mateo where he began sleeping with increasing frequency because he was working on renovating their basement. (Id. at pp. 1062-1063.) The defendant testified that he had been told by the police officer with whom he registered that a residence is "`where you spend the most time.'" (Id. at p. 1063.) The police officer testified that he did not recall what he told the defendant, but he had provided some registrants with that definition of residence. (Id. at pp. 1061-1063.) The trial court in LeCorno denied the defendant's request for an instruction that the jury had to find the defendant had actual knowledge that he was required to register with the City of San Mateo. (Id. at p. 1064.) The LeCorno court agreed that it was error to instruct the jury that the defendant "willfully failed to register [in San Mateo] even if he did not believe that he had acquired a second residence and was required to register in San Mateo." (Id. at p. 1067.) Because of the strong evidence that the defendant misunderstood his registration obligations, the error was found to be "highly prejudicial, and certainly not harmless beyond a reasonable doubt." (Id. at p. 1070.)
Unlike the defendant in LeCorno, defendant did not claim to misunderstand his registration duties, and did not testify as to his understanding of his registration duties, but did not face an instruction explicitly telling the jury to disregard any ignorance of his duty to register his second residence. Similar to the defendant in LeCorno, defendant argues that jury instructions erroneously did not require a finding that he had actual knowledge of the duty to register a particular residence, the Frederick address.
In People v. Poslof (2005) 126 Cal.App.4th 92, 97-98 [24 Cal.Rptr.3d 262] (Fourth Dist., Div. Two) (opn. of Gaut, J.) (Poslof), we evaluated the *1450 knowledge element in jury instructions where the defendant did not register a second address. The defendant in Poslof registered an address in Merced County but then purchased a house in San Bernardino County. (Id. at p. 96.) At trial the defendant contended that his San Bernardino County house was not his residence because he had not stayed there for five consecutive working days, and he proposed a jury instruction to that effect, which the trial court rejected. (Id. at p. 97.) We affirmed the trial court's rejection because the five-working-day timeframe was the grace period for registering changes and not a durational residency requirement under the statute. (Id. at pp. 101-103.) We held that the modified instructions addressing the section 290 offense were consistent with Garcia in defining willfulness because they instructed "the jury it must find defendant had actual knowledge of the duty to register [the particular residence] and failed to do so." (126 Cal.App.4th at p. 99.) We further held that the giving of a general intent instruction was inappropriate. (Id. at p. 100.) However, we held that the error was harmless because "the trial court on several occasions instructed the jury that in order to find defendant guilty of failing to register in violation of section 290, the jury must find defendant had actual knowledge he was required to register the [particular] residence and willfully failed to do so." (Ibid.)
Defendant's contentions are similar to those we evaluated in Poslof in that, in effect, both defendants based their trial court defenses on their arguments that the addresses they failed to register were not their residences. However, the Poslof jury instructions required knowledge of a duty to register the particular second residence, which the instructions in this case did not. As we discuss below, this omission in the instructions in this case was erroneous.

2. Application to Defendant

(2) Former section 290 provided that any person required to register as a sex offender who "willfully violates" that requirement was guilty of a crime. "The word `willfully' implies a `purpose or willingness' to make the omission. (§ 7.) Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. As stated in People v. Honig (1996) 48 Cal.App.4th 289, 334 [55 Cal.Rptr.2d 555], `the term "willfully". . . imports a requirement that "the person knows what he is doing." [Citation.] Consistent with that requirement, and in appropriate cases, knowledge has been held to be a concomitant of willfulness. [Fn. omitted.]' Accordingly, a violation of section 290 requires actual knowledge of the duty to register." (Garcia, supra, 25 Cal.4th at p. 752.)
(3) Although Garcia only addressed actual knowledge of the general duty to register, the reasoning applies as well to actual knowledge of a particular duty to register. This is because "[i]t is nonsensical to say that in *1451 order to purposefully fail to register, defendant must have knowledge only of an abstract duty to register, but that he need not know what that means or how it applies to his circumstances." (LeCorno, supra, 109 Cal.App.4th at p. 1068.) Thus, to paraphrase Garcia, we hold that "[l]ogically one cannot purposefully fail to [register a particular address] without knowing [registration of that address] is required to be performed. . . . Accordingly, a violation of section 290 requires actual knowledge of the duty to register [a particular address]." (Garcia, supra, 25 Cal.4th at p. 752.)
Instructionslike the ones used by the trial court in this casethat define "willfully" by reference to purpose or willingness render the instruction "incomplete in failing clearly to require actual knowledge of the registration requirement." (Garcia, supra, 25 Cal.4th at p. 754; see also People v. Sorden (2005) 36 Cal.4th 65, 76-77 [29 Cal.Rptr.3d 777, 113 P.3d 565] (conc. & dis. opn. of Werdegar, J.) ["the jury must be instructed the word `willfully' requires that the accused have had actual knowledge of his duty to register"]; Poslof, supra, 126 Cal.App.4th at p. 99 [finding no error in an instruction because it required finding actual knowledge of the duty to register a particular address].) Accordingly, the jury should have been instructed that the People had to prove that defendant had actual knowledge of his duty to register the Frederick address in particular.
Paragraphs Nos. 1 and 2 of the modified CALCRIM No. 1170 instruction used by the trial court told the jury that the parties had stipulated (1) that defendant was subject to the registration requirements, and (2) that defendant had actual knowledge of his duty to register changed or second residences. Paragraph No. 3 required a finding that defendant resided at the Frederick address, and paragraph No. 4 required finding that defendant willfully failed to register within five days of starting to reside at the Frederick address. Following paragraph No. 4, the instruction stated that, "[s]omeone commits an act `willfully' when he or she does it willingly or on purpose." The instructions do not elsewhere expressly require that the jury must find defendant had actual knowledge of the duty to register the Frederick address. Thus, the modified CALCRIM No. 1170 instruction given to the jury was erroneous because it did not tell the jury that the prosecution had to prove defendant had actual knowledge of his duty to register the Frederick address, and this defect was not cured in other instructions to the jury.
(4) In addition to a modified CALCRIM No. 1170, the trial court also instructed the jury with a modified CALCRIM No. 250. Defendant argues that this "general intent instruction . . . erroneously allowed the jurors to find [defendant] guilty of the registration offense even if he was unaware of his obligation to register the Frederick Street address." The People agree "it was error to give this particular instruction because the defendant must have *1452 knowledge that he is breaking the law." Because this mere general intent instruction confuses the requirement of actual knowledge, we agree it was erroneous as given to the jury. (Poslof, supra, 126 Cal.App.4th at p. 100.) However, we disagree with the People's concession that "the defendant must have knowledge that he is breaking the law." "[R]ecognizing that defendant must have actual knowledge of his [registration duties] does not transform the violation of section 290 from a general intent crime into a specific intent crime. While defendant need not intend to violate the law, i.e., he need not know the penal consequences of failing to register, he must have actual knowledge that he is required to register and willfully fail to do so." (LeCorno, supra, 109 Cal.App.4th at p. 1069.)
The People argue that nothing from our opinion in Poslof "would [cause] disapproval upon the instructions here." While the instructions in this case are broken down by element in a similar organizational structure to those used in Poslof, the instructions in Poslof defined willfully to mean "`that the defendant had actual knowledge of his duty to register'" and, thus, when the Poslof instructions required finding the "`defendant willfully failed to register the second residence,'" the instructions were requiring that the jury find actual knowledge of the duty to register the particular address in question. (Poslof, supra, 126 Cal.App.4th at pp. 98-99.) Additionally, the trial court in Poslof "on several occasions instructed the jury that in order to find defendant guilty of failing to register in violation of section 290, the jury must find defendant had actual knowledge he was required to register the [particular address] and willfully failed to do so." (Id. at p. 100.) Thus, our approval of the instructions in Poslof does not support the instructions used by the trial court in this case.
(5) Accordingly, we hold that the instructions used by the trial court in this case were erroneous because they did not require the People to prove that defendant had actual knowledge of his duty to register the Frederick address in particular.

C. Harmless Error

Even if the instructions as to the actual knowledge requirements of the failure to register offense were erroneous, we find the error to be harmless beyond a reasonable doubt.
"[W]e may affirm despite the error if the jury that rendered the verdict at issue could not rationally have found the omitted element unproven; the error is harmless, that is, if the record contains no substantial evidence supporting a factual theory under which the elements submitted to the jury were proven but the omitted element was not. [Citation.]" (People v. Sakarias (2000) 22 *1453 Cal.4th 596, 625 [94 Cal.Rptr.2d 17, 995 P.2d 152] (Sakarias).) The instructions omitted the element that defendant had actual knowledge of his duty to register the Frederick address. However, other elements submitted to the jury were proven. Specifically, defendant stipulated he was aware of his registration duties, and the jury found him to be residing at the Frederick address and cohabitating with the victim, who resided at the Frederick address.
During the three- to four-month period from the victim moving into the Frederick address until defendant's arrest, defendant slept every night at the Frederick address; kept clothes and toiletries at the Frederick address; received mail at the Frederick address; used the Frederick address for dog licensing purposes; and contributed to rent for the Frederick address. Because defendant made such substantial use of the Frederick address, absent substantial evidence to the contrary, the jury could only have inferred that defendant was aware he was residing at the Frederick address, and thus, pursuant to his stipulation, aware of his duty to register the Frederick address.
Accordingly, to apply the Sakarias test, we evaluate whether there is substantial evidence that defendant did not know he was residing at the Frederick address. Such evidence could only have been of two types: (1) that defendant's consciousness was not normal such that he was unaware of his actions and surroundings, or (2) that he genuinely did not consider the activities he engaged in at the Frederick address to constitute residency. No evidence of either type was presented. For example, neither defendant nor anyone else testified that defendant had a mental infirmity or a contrary understanding of residency.[5] Thus, there was no substantial evidence that defendant did not know he was residing at the Frederick address.
To summarize, the jury could reasonably infer defendant's actual knowledge of his duty to register the Frederick address from his awareness of his general duty to register a second residence and from the proven fact that defendant resided at the Frederick address. Furthermore, there was no substantial evidence that defendant did not know he was residing at the *1454 Frederick address. To paraphrase Sakarias, the jury "could not rationally have found [defendant's actual knowledge of his duty to register the Frederick address] unproven" and, thus, omission of an instruction that the prosecution had to prove defendant actually knew he had to register the Frederick address was harmless. (Sakarias, supra, 22 Cal.4th at p. 625.)
Defendant refers us to the People's closing argument and suggests overlooking Sakarias in favor of evaluating the effect of the closing arguments and the instructional error cumulatively under People v. Younger (2000) 84 Cal.App.4th 1360, 1382 [101 Cal.Rptr.2d 624] (Younger). In Younger, CALJIC former No. 2.50.02 permitted the jury to rely on prior domestic violence offenses to establish a propensity for similar action but omitted a caution in the revised version not to consider prior offenses sufficient to find guilt of the current offense. Because the prosecutor in Younger emphasized the prior offenses in his closing argument, the reviewing court was reinforced in its conclusion that there was reasonable doubt whether the defendant had been convicted based upon the evidence or his past offenses. (Younger, at pp. 1384-1385.) Younger thus evaluates the harmlessness of instructional error in which a presumption is created, but the instruction creating the presumption omits a caution not to consider prior offenses sufficient to find guilt of the current offense. (See id. at p. 1382.)
Here, the instructional error was the omission of the element that defendant have actual knowledge of his duty to register a particular address. Contrary to defendant's assertion, the People's closing argument did not take advantage of this instructional error. Instead, the portion of the People's closing argument cited by defendant is consistent with the parties' apparent assumption that their stipulation resolved the issue of knowledge. In particular, the portion cited by defendant ignored the issue of knowledge and instead argued that defendant "was residing with [the victim] and her children," defendant only registered "at one place," and that defendant should be held "accountable" for both the "obvious crime of failing to register at the Frederick Street address" and also for the crime of inflicting corporal injury on "his live-in girlfriend." Unlike Younger, in which the instructional error could have created a defective deliberative process by permitting the jury to rely on prior offenses to establish a current offense, the error in this case removed from the jury's consideration an element of the offense. Because the omitted element was not considered by the jury, closing arguments could not have affected deliberation concerning that element. Thus, Younger is not analogous and unlike Sakarias does not provide us with the appropriate test for evaluating instructional error when an element of an offense is omitted.
As evaluated under Sakarias, we conclude this jury could not have found the omitted knowledge element unproven and, thus, uphold the judgment.

*1455 IV. DISPOSITION
The judgment is affirmed.
Gaut, J., concurred.
KING, J., Concurring and Dissenting.
I concur with the majority that to convict an individual of violating Penal Code section 290, the jury must find that the defendant had actual knowledge of the requirement to register the particular address involved. I further agree that the trial court erred in not properly instructing the jury on this element. I disagree, however, that the error is harmless.
Here, the majority concludes the instructional error was harmless because, based on the evidence presented, "the jury could only have inferred that defendant was aware he was residing at the Frederick address . . .," and "the jury `could not rationally have found [defendant's actual knowledge of his duty to register the Frederick address] unproven. . . .'" (Maj. opn., ante, at pp. 1453-1454, italics added.) Initially, I believe this to be an inappropriate standard when applied to the omission of an instruction on the "mens rea" necessary for the commission of the crime. Additionally, the evidence does not inescapably lead to but one conclusion, as suggested by the majority.
"Harmless-error review looks . . . to the basis on which `the jury actually rested its verdict.' [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact renderedno matter how inescapable the findings to support that verdict might bewould violate the jury-trial guarantee." (Sullivan v. Louisiana (1993) 508 U.S. 275, 279 [124 L.Ed.2d 182, 113 S.Ct. 2078] (Sullivan); see also People v. Kobrin (1995) 11 Cal.4th 416, 429-430 [45 Cal.Rptr.2d 895, 903 P.2d 1027].) The right to a jury trial, the Supreme Court concluded, "requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal. . . ." (Sullivan, supra, at p. 280.)
As further explained by Justice Stevens in a concurring opinion in Neder v. United States (1999) 527 U.S. 1 [144 L.Ed.2d 35, 119 S.Ct. 1827] (Neder), the failure to instruct the jury as to an element can be harmless only when, based upon other jury findings implicit in the verdict, the verdict "necessarily include[s] a finding" on the omitted element. (Id. at p. 26 (conc. opn. of Stevens, J.).) According to Justice Stevens, there is "a distinction of true importance between a harmless-error test that focuses on what the jury did *1456 decide, rather than on what appellate judges think the jury would have decided if given an opportunity to pass on an issue." (Id. at p. 27 (conc. opn. of Stevens, J.).) The harmless error analysis, he explained, "`may enable a court to remove a taint from proceedings in order to preserve a jury's findings, but it cannot constitutionally supplement those findings.' [Citation.]" (Ibid. (conc. opn. of Stevens, J.).) In a dissenting opinion in the same matter, Justice Scalia, joined by Justices Souter and Ginsburg, stated: "The failure of the court to instruct the jury properlywhether by omitting an element of the offense or by so misdescribing it that it is effectively removed from the jury's considerationcan be harmless, if the elements of guilt that the jury did find necessarily embraced the one omitted or misdescribed." (Id. at p. 35 (dis. opn. of Scalia, J.).) Justice Scalia further explained that the majority was "casting Sullivan aside" and "throw[ing] open the gate for appellate courts to trample over the jury's function." (Id. at p. 36 (dis. opn. of Scalia, J.).)
While I agree with the majority that there is "substantial evidence" from which the jury could infer that defendant had actual knowledge that he had to register the Frederick Street address, it is nonetheless not for us to insert our thoughts on an issue that was never addressed or determined by the jury. As expressed by Justice Stevens, harmless error may allow a court to remove a taint from proceedings in order to preserve a jury's findings, but it cannot be used to supplement those findings. And in line with Justice Scalia, there is nothing in this record upon which we can conclude that the jury did in fact consider or determine, even by way of other findings, that defendant knew he had to register the Frederick Street address. Defendant's knowledge was simply not addressed in the jury verdict.
The majority relies on People v. Sakarias (2000) 22 Cal.4th 596 [94 Cal.Rptr.2d 17, 995 P.2d 152] for its harmless error analysis. In turn, Sakarias primarily bases its analysis on Neder and People v. Flood (1998) 18 Cal.4th 470 [76 Cal.Rptr.2d 180, 957 P.2d 869]. While I agree with each of these cases on the facts there presented, their discussion of harmless error is inapplicable to our facts.
In Neder, the United States Supreme Court considered whether the failure to instruct the jury on an element of a crime is subject to harmless error analysis. In that case, the defendant was convicted of, among other crimes, filing false income tax returns that underreported $5 million in income. An element of this crime is that false statements made by the defendant are "material." (26 U.S.C.A. § 7206(1).) The defendant did not argue at trial or on appeal that the false statements at issue were immaterial. (Neder, supra, 527 U.S. at p. 16.) Outside the presence of the jury, the court found that the evidence established the element of materiality and instructed the jury that the question of materiality "`is not a question for the jury to decide.'" (Id. at p. 6.)
*1457 The Neder court determined that the error was subject to harmless error analysis and, under the circumstances presented in that case, was harmless. In distinguishing Sullivan, the court explained: "The omitted element [in Neder] was materiality. [Neder] underreported $5 million on his tax returns, and did not contest the element of materiality at trial. [Neder] does not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed. Reversal without any consideration of the effect of the error upon the verdict would send the case back for retrial-a retrial not focused at all on the issue of materiality, but on contested issues on which the jury was properly instructed. We do not think the Sixth Amendment requires us to veer away from settled precedent to reach such a result." (Neder, supra, 527 U.S. at p. 15, italics added.) By contrast, in the matter before us, the issue of "residency" was a contested issue and I would expect it to be contested upon a retrial.
This case is also unlike People v. Flood, supra, 18 Cal.4th 470, where the court found harmless error in failing to instruct on an element of the crime of evading a peace officer; the court did not instruct the jury that it had to find that the individual driving the pursuing vehicle was a peace officer. There, the court found that "the record established[d] beyond a reasonable doubt that the trial court's instructional error on the peripheral peace officer issue did not contribute to the jury's guilty verdict. . . ." (Id. at p. 505.) It based its conclusion on: (1) the defendant effectively conceded the issue by failing to object to the instruction, presenting no evidence regarding the peace officer element, and failing to dispute the prosecution's evidence on the issue; (2) the actual verdict rendered demonstrated that the jury found that the two persons in the car pursuing the defendant wore "distinctive" uniforms and were driving a "distinctively marked" vehicle; (3) because the peace officer requirement is an expressly enumerated element of the crime, the defendant could not contend that he lacked notice or did not have a full opportunity to present any evidence on the issue; (4) "all of the evidence at trial relevant to the issue in question indicated that [the officers in the pursuing vehicle] were peace officers . . ."; (5) the "misinstruction [was] on a peripheral issue that was never actually in dispute at trial"; and (6) the missing element "had nothing to do with defendant's own actions or mental state." (Id. at pp. 504-507.) Under such circumstances, the court concluded, "there is no possibility that the error affected the result." (Id. at p. 507.)
By contrast, here the element of defendant's knowledge was not a peripheral issue. It went directly to the heart of the prosecution's case, that is, defendant's mens rea. At no point did defendant concede that the Frederick Street address was a second residence, let alone that he knew that it qualified under the law as a second residence. Furthermore, there is nothing in the present jury verdict that addresses the issue of whether defendant had knowledge that the Frederick Street address qualified as a second residence. *1458 Finally, there is "substantial evidence" by which a jury could conclude that defendant did not fully realize that the Frederick Street address was a second residence: he did not pay rent on the premises; he kept many of his belongings and clothes at his Alessandro Boulevard apartment; when visited by his mother it would be at the Alessandro Boulevard apartment; and much of his mail was addressed to the Alessandro Boulevard residence. And lastly, defendant stipulated that he knew he had to register a second residence; in that he knew he had to register a second residence and did not register the Frederick Street address, this jury could logically infer that he did not believe the Frederick Street address qualified as a second residence.
While I fully understand that the jury found that the Frederick Street address was a second residence, this finding does not equate to a finding that defendant had actual knowledge that it was a second residence.
People v. Sakarias, supra, 22 Cal.4th 596 is also inapposite. There, the defendant committed a murder after entering the residence with the intent to steal. At the time of entry, the victim, whom the defendant knew, was not at home. The defendant and his coconspirator waited for the victim to return. Upon her entry, they hit her over the head with a hatchet and stabbed her multiple times. During jury deliberations the jury inquired: "`Does burglary begin when a structure is entered and continue until the structure is left?'" (Id. at p. 623.) The court answered as follows: "`Although it is alleged that the killing in the present case occurred sometime after it is alleged the defendant entered the house, if the jury finds that the defendant committed burglary by entering the house with the intent to steal, the homicide and the burglary are parts of one continuous transaction.'" (Ibid., italics added.) The Supreme Court found this answer to be error, in that it is an issue for the jury, not the judge, to determine whether or not the murder was committed in the "`perpetration of'" or "`while the defendant was engaged in . . . the commission of'" a burglary. (Id. at p. 624.) In concluding that the error was harmless, the court stated: "That the erroneous answer did not contribute to defendant's conviction of first degree murder is plain. In addition to the theory of killing in the perpetration of burglary, the jury was instructed on three additional theories of first degree murder: killing in the perpetration of robbery, deliberate and premeditated murder, and murder by lying in wait. As the jury found true the robbery-murder special-circumstance allegation, necessarily finding the murder was committed in the commission of robbery, `we can determine that [the first degree murder] verdict rested on at least one correct theory,' and the court's answer on duration of burglary was thus `of no consequence to the murder charge.' [Citation.]" (Id. at p. 625, italics added.) The court went on to explain that from the record, it was evident that the *1459 jury's question was not concerned directly with whether it was one continuous transaction; the court also concluded that there was absolutely no evidence that the burglary/murder was not other than a continuous transaction.
Unlike Sakarias, our present record does not support a conclusion that the instructional error was of no consequence to the conviction of the charge of failure to register. Defendant's mens rea was not a peripheral or uncontested issue. The jury was not instructed on this basic and fundamental element. In the verdict rendered, there are neither explicit nor implicit findings that the jury concluded that defendant had actual knowledge that the Frederick Street address qualified as a second residence. And while there was by inference "substantial evidence" to support such a finding, there was also "substantial evidence" from which to infer a contrary finding.
I therefore do not believe that the failure of the trial court to instruct on an element of the crime is harmless beyond a reasonable doubt.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Former section 290 was repealed and reenacted effective October 13, 2007. (Stats. 2007, ch. 579, §§ 7, 8.) Subdivision (a)(1)(B) of former section 290 was relocated to a new section, section 290.010, and the reference to "subparagraph (A)" was changed to "the Act." (§ 290.)
[3] The victim, the victim's daughter, and defendant's mother also gave testimony applicable to the willful infliction of corporal injury on a cohabitant conviction. The jury's finding of guilt on that count necessarily means that the jury found defendant and the victim to be cohabiting. Other than establishing that the jury found defendant and the victim to be cohabiting, the willful infliction of corporal injury on a cohabitant conviction is not relevant to this appeal. Accordingly, we do not recite the additional evidence relating to that conviction.
[4] Defendant's stipulation that he knew of his duty to register a second residence distinguishes this case from two others in which the issue was the knowledge of the general duty to register a second address. (See People v. Jackson (2003) 109 Cal.App.4th 1625, 1635 [1 Cal.Rptr.3d 253] ["no instruction that there must be evidence that defendant actually knew that he was required to register additional addresses"]; People v. Edgar (2002) 104 Cal.App.4th 210, 220 [127 Cal.Rptr.2d 662] [instructions did not require "the jury to find that appellant actually knew the law required him to register multiple residences"].)
[5] Evidence of mental infirmity or a contrary understanding of residency was effectively precluded by defendant's only defense at trial to the failure to register charge. As previously mentioned in comparing this case with Garcia, this defense was that he did not reside at the Frederick address, as distinguished from admitting his use may have constituted residency but claiming he did not believe he was residing there. He sought to establish this defense by showing his use of the Alessandro address. However, the defense was flawed in its conception because residency in the context of section 290 is not exclusivejust because he resided at the Alessandro address did not imply that he did not reside at the Frederick address for purposes of section 290 because he could reside at both addresses and be required to register both residences. (See former § 290, subd. (a)(1)(B), current § 290.010 [duty to register multiple residences].) Accordingly, the jury found defendant to be residing at the Frederick address even while defendant apparently also resided at the Alessandro address.