Filed 3/19/14  P. v. Olvera CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIELLE OLVERA,<br><br>    Defendant and Appellant. | H039858<br>(Monterey County<br>Super. Ct. No. SS130514) |

Defendant Danielle Olvera entered a plea of no contest to active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)),[1] and she admitted that she had suffered a prior serious or violent felony conviction, i.e., a strike (§ 1170.12, subd. (c)(1)).  She did so under a conditional plea agreement pursuant to which she would receive a maximum sentence of four years in prison.  Defendant thereafter brought a motion requesting that the court exercise its discretion to dismiss the prior strike allegation in accordance with *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), which was opposed by the People.  The court denied the *Romero* motion; stayed the enhancement under which it was alleged that defendant had suffered a prior conviction for which she had served a prison term and had not remained free of custody

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

for a period of five years (§ 667.5, subd. (b); prison prior); and sentenced defendant to a term of 32 months in prison.

Defendant argues on appeal that the denial of her *Romero* motion constituted an abuse of discretion because the court failed to give adequate consideration to her background, experience, and prospects, including her contentions that her criminal history was the result of her drug dependency and that she was willing to undergo drug treatment.

We conclude that the court did not abuse its discretion in denying the *Romero* motion. We will therefore affirm the judgment.

FACTS[2]

At approximately 9:00 p.m. on March 7, 2013, Soledad Police officers patrolling the area of Walker Drive observed a white Chrysler van parked in front of 1329 Walker Drive, which was the residence of a person with an outstanding warrant and was also a known site of drug trafficking. One of the officers ran a registration check on the van and determined that it had been reported stolen out of Las Vegas, Nevada. The police officers made contact with defendant as she got out of the passenger's seat of the van. She gave a false identity to the officers. She said that the van had been driven by her friend, Jaime, who had gone into the 1329 Walker Drive residence. The officers contacted Daniel Hernandez, a known Norteño gang member, at the residence; he denied that anyone named Jaime was there.

After placing defendant under arrest, the officers conducted a search of her purse and the van. They discovered inside her purse several sets of keys, spark plugs, pliers, a

---

[2] Our summary of the facts is taken from the probation report and from the transcript of the preliminary hearing.

2

knife, and a screwdriver.  Spark plugs and screwdrivers can be used as burglary devices.[3] The officers also found a police scanner in the glove compartment.

During questioning, defendant admitted to the officers that she had given a false identity because "she had an absconding warrant from parole."  She also conceded that she had made up a story about being driven by "Jaime" to the residence.  She would not provide the officers with the name of the person driving the van, but she admitted knowing it had been stolen.  She also admitted that the burglary tools in her purse belonged to her.

While in custody, defendant admitted that she was a Norteño gang member and had made admissions of such gang membership dating back to 2010.  A gang expert testified at the preliminary hearing that it was his opinion that defendant was an active participant within the Norteño street gang, and that the charged offenses of being in possession of a stolen vehicle and of burglary tools were committed for the benefit of and in association with the Norteño criminal street gang.

### THE PRIOR STRIKE[4]

Defendant was convicted previously of one violent or serious felony.  On November 9, 2009, Salinas Police officers initiated a traffic stop of a vehicle; defendant was driving the vehicle at an excessive rate of speed.  (There were other suspected Vehicle Code violations.)  During a search of the vehicle, police found methamphetamine packaged for sale, as well as a loaded handgun in the center console.  The two passengers in the car were known Norteño gang members.  Defendant was ultimately convicted on March 30, 2010, in Monterey County Superior Court (Case No. SS092531B) of

---

[3] Spark plugs "can be used with an electrical charge to shatter the window to gain entry into the vehicle or [other] property."

[4] Our summary of the strike prior is taken from the probation report and the preliminary hearing transcript.

transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) with a gang enhancement (§ 186.22, subd. (b)(1)(A)), constituting a violent or serious felony (strike) within the meaning of section 1170.12, subdivision (c)(1).

PROCEDURAL BACKGROUND

Defendant was charged by information filed on March 25, 2013, with four felonies: receiving stolen property, i.e., a motor vehicle (§ 496d, subd. (a); count 1); the unlawful driving or taking of a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a); count 2); possession of burglar's tools (§ 466; count 3); and giving false information to a peace officer (§ 148.9, subd. (a); count 4). It was alleged that each of the four felonies was committed for the benefit of, at the direction of, or in association with a Norteño criminal street gang (§ 186.22, subd. (b)(1)(A)). It was alleged further that defendant had suffered a prior serious and/or violent felony conviction within the meaning of section 1170.12, subdivision (c)(1), namely, transporting a controlled substance to benefit a criminal street gang (Health & Saf. Code, § 11379, subd. (a); Pen. Code, § 186.22, subd. (b)(1)(A)); and had suffered one prison prior (§ 667.5, subd. (b)).

On April 25, 2013, the People, as part of a conditional plea agreement, moved to amend the information to add as count 5 the offense of active participation in a criminal street gang (§ 186.22, subd. (a)), a strike, and to add the prior strike allegation as to that offense. The court granted the People's motion. Defendant then entered a conditional plea of no contest to count 5 and admitted the prior strike allegation. The plea was entered with the understanding that (1) defendant would be filing a *Romero* motion to strike the prior strike allegation; (2) upon sentencing, the remaining counts and allegations would be dismissed; and (3) defendant would receive a maximum sentence of four years in prison. Before accepting the plea, the court apprised defendant fully of the rights she was giving up as a result of her no contest plea and concerning the consequences of that plea, confirming that she had freely and voluntarily signed a waiver

4

of rights form in connection with the conditional plea.  Counsel stipulated that there was a factual basis for the plea.

Defendant thereafter filed a motion to have the court exercise its discretion to strike the prior strike allegation, in accordance with *Romero*, *supra*, 13 Cal.4th 497, which was opposed by the People.  After hearing argument on June 27, 2013, the court denied defendant's motion.  It then imposed a prison sentence of 16 months for the gang participation offense, doubled for the prior strike allegation, for a total prison term of 32 months.[5]  The court dismissed the remaining counts, enhancements, and special allegations pursuant to section 1385.  Defendant filed a timely notice of appeal based upon the sentence or other matters occurring after the plea that do not affect the validity of the plea.

DISCUSSION

I.      *Denial of* Romero *Motion*

A.      *Applicable Law*

The Supreme Court held in *Romero* that the trial court, on its own motion, is empowered under section 1385, subdivision (a) to dismiss or strike prior felony conviction allegations in cases that are brought under the law known as the "Three Strikes" law.  (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.)  The court's discretion, however, is limited to instances in which dismissing such strikes is in the furtherance of justice, as determined by giving " ' "consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People . . . .*" ' " (*Id.* at p. 530, original italics.)  Thus, the court may not strike a sentencing allegation "solely 'to accommodate judicial convenience or because of court congestion[' citation, or] simply because a defendant pleads guilty.  [Citation.]  Nor would a court act properly if 'guided

---

[5] The court also denied defendant's motion to continue sentencing.  Defendant does not challenge that ruling on appeal.

5

solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his [or her] present offenses,' and other 'individualized considerations.' [Citation.]" (*Id.* at p. 531.)

The Supreme Court later explained further "the 'concept' of 'furtherance of justice' within the meaning of Penal Code section 1385[, subdivision] (a) [which *Romero* had recognized as being] ' "amorphous." ' [Citation.]" (*People v. Williams* (1998) 17 Cal.4th 148, 159 (*Williams*).) Our high court noted that in deciding whether to dismiss a strike " 'in furtherance of justice' pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.) The sentence to be meted out to the defendant "is also a relevant consideration . . . in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.]" (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) If the court strikes or dismisses one or more prior conviction allegations, its reasons for doing so must be stated in an order entered on the minutes. (*Ibid.*) Conversely, the trial court has no obligation to set forth its reasons for deciding *not to* strike or dismiss prior strikes. (*In re Large* (2007) 41 Cal.4th 538, 546, fn. 6; see also *In re Coley* (2012) 55 Cal.4th 524, 560.)

The granting of a *Romero* motion is "subject to review for abuse of discretion. This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts. [Citations.]" (*Williams*, *supra*, 17 Cal.4th at p. 162; see also *People v. Garcia*, *supra*,

6

20 Cal.4th at p. 503.)  And this abuse of discretion standard also applies to appellate review of the denial of *Romero* motions.  (*People v. Carmony* (2004) 33 Cal.4th 367, 374-376 (*Carmony*); see also *id.* at p. 375:  " 'Discretion is the power to make the decision, one way or the other.' ")  It is the defendant's burden as the party attacking the sentencing decision to show that it was arbitrary or irrational, and, absent such showing, there is a presumption that the court " ' "acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.]"  (*Id.* at p. 377.)  Such a discretionary decision " ' "will not be reversed merely because reasonable people might disagree." ' "  (*Ibid.*)

Placing in context the circumstances under which a court properly exercises its discretion in granting a *Romero* motion, the Supreme Court has explained:  "[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.  [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances."  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  Therefore, "[b]ecause the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he [or she] squarely falls once he [or she] commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."  (*Ibid.*)

B.    *Defendant's* Romero *Motion*

Defendant argued in her *Romero* motion that, based upon a balancing of the three relevant factors—(1) the nature and circumstances of the present offense, (2) the nature and circumstances of the strike prior, and (3) the defendant's background, character, and

7

prospects (*Carmony*, *supra*, 33 Cal.4th at pp. 378-379)—the court should exercise its discretion to strike the prior strike allegation for purposes of sentencing. She contended that both the current and prior crimes were nonviolent ones. She also argued that there were extenuating circumstances in her background, including her drug addiction and the trauma of her parents' divorce at a young age, which militated toward the court's exercising its discretion to dismiss the strike. According to her *Romero* motion, defendant's parents were divorced when she was eight due to her father's drug and alcohol abuse, and her mother was "very career[-]driven," which resulted in a lack of parental presence while she was growing up. Although her mother placed defendant in private school, her family lived in a bad neighborhood and she became involved with local boys becoming involved in gang activities. As a result, both defendant and her brother became involved in gang activities, such as drug sales, at a young age. She also started abusing alcohol and drugs at a very young age. She began drinking when she was eight; she started smoking marijuana when she was 11. And she began using cocaine and methamphetamine at ages 13 and 16, respectively. Defendant noted in her motion that "[w]hen possible, [she] drinks alcohol and uses methamphetamine on a daily basis, although she tries to avoid using either to excess." She "attribute[s] 100% of her criminal activity to drugs, either because she was committing crimes while under the influence, or committing crimes so that she could fund her drug habit."

Defendant noted that positive aspects in her life included that she had obtained a GED while in prison; her goal was to attend college; she has a young son (born in 2006) in her mother's legal custody; and she has a desire to "complete a serious and lengthy residential rehabilitation program to assist her" with her addiction issues. She is also "quite young at 26 years old . . . [and] has a child and her whole life ahead of her."

The People argued in opposition that the fact that the current offense was nonviolent, and that the acts arising out of the conviction were "not that egregious," were not reasons for the granting of the *Romero* motion. They also argued that defendant had

8

"not led a blameless life" since having committed the prior strike offense. (Capitalization and emphasis omitted.) The People argued that, weighing all factors, "defendant should not be deemed to be outside the spirit of the Three Strikes Law."

At the hearing on the *Romero* motion, defense counsel reiterated that defendant's criminal history, including the current crime and the prior strike offense, did not involve acts of violence. He argued that defendant "want[ed] to correct . . . the path that she's on." And he contended that her character, background and prospects strongly favored the granting of the motion. Defense counsel's position was that dismissing the strike offense would give her the possibility of receiving probation for the gang participation offense, which would be beneficial toward her goal of reforming her life by completing drug rehabilitation.

The People argued that defendant "has a very poor record and she continues to demonstrate that she's not willing to learn from her mistakes." The prosecutor noted that defendant, after being released from prison and placed on parole, was convicted of a misdemeanor in 2012 and received probation; while she was on probation and parole, she committed the current felony offense of which she was convicted. The People therefore urged that the *Romero* motion be denied.

The court denied defendant's *Romero* motion. It noted that it had considered the moving and opposing papers. The court observed that defendant (1) with respect to the current offense, had burglar's tools in her possession and available for her to commit further crimes for the benefit of the Norteño gang; and (2) had committed three gang-related offenses within five years. It concluded that defendant's case was not one in which the circumstances took it "outside of the spirit of the Three Strikes Law, notwithstanding the lack of criminal violence."

C.    *Discussion Regarding Denial of* Romero *Motion*

Defendant argues that the court abused its discretion in denying her *Romero* motion. She contends that "the current felony [was] relatively minor"; the offense was

9

nonviolent; she did not resist arrest; and there is no indication of what role, if any, she played in the theft of the van. She argues further that her "criminal history is also relatively minor." And she reiterates that her background, character, and prospects—including the difficulties of her childhood, her drug addiction, the fact that her crimes are all traceable to her addiction, her having received a GED while in prison, and her intentions of abandoning the gang lifestyle and to enter a treatment program—supported the court's granting of the *Romero* motion.

As noted, the court must determine from a review of the relevant factors whether there are " 'extraordinary' " circumstances such that the defendant, a " 'career criminal[,] can be deemed to fall outside the spirit of' " the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) The court, in considering the *Romero* motion, was obliged to consider the three factors identified by the high court in *Williams*, namely, "[1] the nature and circumstances of [defendant's] present felonies[,2 the nature and circumstances of defendant's] prior serious and/or violent felony convictions, and [3] the particulars of [defendant's] background, character, and prospects . . . ." (*Williams*, *supra*, 17 Cal.4th at p. 161.) We are confident from a review of the record that the court did consider each factor in concluding that this case did not present extraordinary circumstances warranting the court's exercising its discretion to dismiss the prior strike.

Concerning the first factor (current offense), the fact that the crime was gang-related cannot be ignored. Defendant was caught exiting a stolen van—one that she knew had been stolen—that was parked outside the house of a known Norteño gang member. Further, the court noted that when she was arrested, defendant was in possession of burglar's tools that could be used to commit further crimes for the benefit of her Norteño street gang. Moreover, the fact that the current offense was nonviolent does not mandate the granting of the *Romero* motion. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 344 [reversing order granting *Romero* motion which was based in part on nonviolent nature of current offense; "the nonviolent or nonthreatening nature of the

10

felony cannot alone take the crime outside the spirit of the law"]; see also *People v. Poslof* (2005) 126 Cal.App.4th 92, 108 [even though current crime, failing to register as a sex offender, was nonviolent, denial of *Romero* motion not an abuse of discretion]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [although current crime of car theft "not as serious as many felonies," it was "far from trivial"].)

Addressing the second *Williams* factor, the prior strike offense was the transportation of a controlled substance with a gang enhancement. Again, the fact that the offense was committed for the benefit of a criminal street gang cannot be ignored. And the mere fact that the strike was one not involving violence does not suggest that the *Romero* motion should have been granted. Many strike offenses are nonviolent ones. Were the characterization of the strike offense at issue as "nonviolent" to be a determinative factor in whether to grant a *Romero* motion, the purpose and effect of the Three Strikes Law would be largely eviscerated.

Contrary to defendant's position here and in the trial court, consideration of the third factor enunciated in *Williams*—"the particulars of [defendant's] background, character, and prospects" (*Williams*, *supra*, 17 Cal.4th at p. 161)—does not favor the dismissal of the strike. Defendant's criminal history, while perhaps not extensive, was continuous. In June 2006, she was convicted of taking or driving a vehicle without the owner's permission (Veh. Code, § 10851, subd. (a)), a misdemeanor for which she received three-years' probation. While still on probation, in November 2008, defendant committed another offense and was convicted in October 2009 of knowingly permitting a person to bring a firearm into her vehicle and having done so for the benefit of a criminal street gang (former § 12034, subd. (a); § 188.22, subd. (d)). She was again granted three years' formal probation. While on probation, she committed the strike offense— transportation of a controlled substance for the benefit of a criminal street gang (Health & Saf. Code, § 11379, subd. (a); § 188.22, subd. (d))—and was sentenced in March 2010. Her probation from the 2008 case was revoked, and she was sentenced to four years in

11

prison.  After being paroled, there were four instances in which defendant was found (between May 2012 and March 2013) to have violated parole; the last violation was as a result of her commission of the current offense.  Clearly, as the prosecution noted, defendant showed that she was not "willing to learn from her mistakes."  (See *Williams*, *supra*, 17 Cal.4th at p. 163 [noting that multiple convictions prior to the present offense indicated that the defendant " 'had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson' "].)

In addition to defendant's criminal history, it is clear that the court considered other aspects of defendant's background.  Throughout her adult life, defendant had demonstrated a pattern of criminal activity as well as participation in, and association with, a Norteño criminal street gang.  This pattern continued unabated, notwithstanding the birth of her child in 2006.  She claimed, through her attorney, that her criminal behavior was entirely the result of her drug dependency.  And she also claimed, through counsel, that she intended to renounce any further involvement with the Norteño gang, just as her brother had already done, and that she wanted to attend a long-term treatment program to address her drug abuse issue.  But beyond these statements through counsel, there was no evidence that defendant had taken positive steps to turn her life around.  The court observed:  "You can't wait and ask for mercy.  You've got to take steps before you're at that point where there's another prison commitment or another strike conviction and show [the court] that you've done these positive steps.  And [the court has not] seen that."

Moreover, the record showed that her prospects, given her employment history and drug dependency, were not good.  (See *Williams*, *supra*, 17 Cal.4th at p. 163 [emphasizing that defendant's unemployment and failure to follow through with drug abuse treatment were factors indicating that his prospects were not good].)  She had "a minimal history of employment."  The only indication of any significant employment,

according to defendant herself in her *Romero* motion, was having worked at Starbuck's for an unspecified number of hours per week for an 11-month period in 2006-2007. Furthermore, notwithstanding her admission that "[w]hen possible, [she] drinks alcohol and uses methamphetamine on a daily basis," there is no indication that defendant had ever entered a treatment program, attended AA/NA meetings, or otherwise made attempts to address her drug dependency. The fact that defendant claims that her drug dependency was the cause of all of her criminal behavior does not furnish a basis for the granting of her *Romero* motion. As one court explained in reversing the trial court's granting of a *Romero* motion, "Although 'drug use appears to be an underlying factor in [appellant's] criminal behavior, and in fact may be the root cause thereof,' the record is barren of any attempts by [the defendant] to 'root out' such destructive drug dependency. Accordingly, his drug dependency does not fall into the category of mitigating circumstances. [Citations.]" (*People v. Gaston*, *supra*, 74 Cal.App.4th at p. 322; see also *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 ["drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment]".)[6]

---

[6] Defendant argues that the court below gave excessive weight to certain factors, such as her gang association, and gave inadequate consideration of such "critical factors . . . as the relation between her crimes and her addiction and the likelihood that, if her need for assistance in treating her drug addiction is met, her criminal activity will cease." In effect, she is contending that, because the court did not specifically articulate on the record all of the specific aspects of her background, character and life experience it considered in connection with her motion, the court necessarily "failed to give appropriate consideration" to all relevant factors. But the law does not require the trial court to specify the reasons for denying a *Romero* motion. (*In re Large*, *supra*, 41 Cal.4th at p. 546, fn. 6.) And we will not infer that the court failed to give adequate consideration to all relevant factors (including defendant's drug dependency) enunciated by our high court in *Williams*—"the particulars of [defendant's] background, character, and prospects . . . ." (*Williams*, *supra*, 17 Cal.4th at p. 161)—where there is no showing of such failure in the exercise of the court's discretion.

13

Defendant relies on *People v. Bishop* (1997) 56 Cal.App.4th 1245 (*Bishop*) for the proposition that the court below should have granted her *Romero* motion because (in her view) her "criminal history is . . . relatively minor." Her reliance upon *Bishop* is misplaced. There, the defendant was charged with petty theft with a prior theft-related conviction that had resulted in his incarceration (§ 666); the information alleged, among other things, that he had sustained three prior strike convictions. (*Bishop*, at pp. 1247-1248.) The trial court granted the defendant's motion to strike two of three prior strikes alleged in the information which it deemed "remote (17 to 20 years old)" (*id.* at p. 1248) and thereafter sentenced the defendant to a 12-year prison term. (*Id.* at pp. 1248-1249.) The appellate court rejected the People's claim that the court erred because it placed undue weight on mitigating factors and did not properly weigh factors in aggravation that supported the imposition of a Three-Strikes sentence. (*Id.* at p. 1250.) It observed that the People's analysis was flawed because it "fail[ed] to accord the trial court the breadth of discretion that it has traditionally possessed under section 1385." (*Ibid.*) The appellate court found no abuse of discretion, explaining that while the trial court must consider that a defendant's qualification as a three-strikes offender is a factor in aggravation, "the nature and timing of a defendant's crimes may also operate as mitigation, such as in this case where the present crime is a petty theft and the prior violent offenses are remote." (*Id.* at p. 1251.)

*Bishop* is distinguishable, both procedurally and factually. The court there was concerned with whether the *granting* of a *Romero* motion constituted an abuse of discretion. Here, we consider whether the court abused its discretion in *denying* defendant's motion, thereby concluding that this case did *not* present " 'extraordinary' " circumstances under which defendant, as "a career criminal[, should] be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record . . ." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) We conclude that the court did not abuse its discretion in reaching

14

this conclusion.  Furthermore, here, unlike in *Bishop*, the prior strike offense was not remote—defendant was convicted of the strike offense less than three and one-half years before her commission of the current offense.  Further, her commission of the current offense apparently occurred no more than 10 months after being released on parole after serving her prison sentence for the strike offense.[7]  And the current offense, unlike the petty theft offense in *Bishop*, was much more serious—it itself was a strike offense. (§ 1192.7, subd. (c)(28); see also *People v. Briceno* (2004) 34 Cal.4th 451, 456 [serious felony under § 1192.7, subd. (c)(28) includes both substantive crime of gang participation under § 188.22, subd. (a), and any felony conviction where gang enhancement under § 188.22, subd. (b)(1) attaches].)  *Bishop* provides no assistance to defendant here.

The court, after giving due consideration to the specifics of the current offense, the nature of the prior strike offense, and defendant's background (including her criminal record), character and prospects, properly concluded that defendant did not fall outside of the letter and spirit of the Three Strikes sentencing scheme.  (See *People v. Philpot* (2004) 122 Cal.App.4th 893, 906-907 [court properly considered the defendant's history of continuously committing crimes for 20 years, his underlying drug addiction, and the prior and current offense as indicative of his poor future prospects and that, as "a flagrant recidivist," he was not outside the spirit of the Three Strikes law].)  The circumstances presented by defendant here are not " 'extraordinary.' " (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  The court's ruling did not " 'fall[] outside the bounds of reason' under the applicable law and the relevant facts.  [Citation.]" (*Williams*, *supra*, 17 Cal.4th at p. 162.)  Therefore, we find that the court did not abuse its discretion in denying defendant's *Romero* motion.

---

[7] The record does not disclose the date defendant was released from prison after being sentenced to prison in March 2010 for the strike offense.  The record shows that defendant's first subsequent probation violation occurred May 29, 2012.  We surmise that defendant was paroled in or prior to May 2012.

15

DISPOSITION

The judgment is affirmed.

_____
                              Márquez, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Premo, J.

16